[No. H000583. Sixth Dist. Dec. 17, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
RUSSELL BAILEY, Defendant and Respondent.

■■■■■■■■■■■■■■■■

**COUNSEL**

John K. Van de Kamp, Attorney General, Martin S. Kaye and Blair W. Hoffman, Deputy Attorneys General, Leo Himmelsbach, District Attorney, and Joseph V. Thibodeaux, Deputy District Attorney, for Plaintiff and Appellant.

Sheldon Portman, Public Defender, and Barbara B. Fargo, Deputy Public Defender, for Defendant and Respondent.

**OPINION**

**LEACH, J.**\*—Defendant Russell Bailey pleaded not guilty to charges of possession of cocaine and denied allegations of prior convictions. His motion to suppress evidence under Penal Code section 1538.5 was granted and the case dismissed. The People appeal.

At issue is the validity of a consent to search given in the presence of an officer who has directed a red light toward appellant's vehicle.

An officer in an unmarked police car saw a vehicle occupied by a single person in the parking lot of a Sears store which was closed. The area was one in which persons from a nearby establishment would come to their cars to ingest drugs. The officer pulled in behind the car and turned on his emergency lights, red and blue in front and amber to the rear. The officer approached the car to see what the person was doing. As he was a few feet from the car he smelled marijuana. He spoke to the occupant and asked for consent to search. Consent was given by the occupant. The officer searched and found contraband material. The officer testified that as he approached the car, the occupant was not free to leave.

■ Consent can be given to a search, but the consent must be unequivocal, specific, and freely and intelligently given. (*Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260 [57 Cal.Rptr. 623, 425 P.2d 223].) The

---

\*Assigned by the Chairperson of the Judicial Council.

consent must be voluntary and not in response to any express or implied assertion of authority. Conversely, if the consent is given because of an unlawful assertion of authority, it is not voluntary and is unlawful. (*Florida v. Royer* (1983) 460 U.S. 491 [75 L.Ed.2d 229, 103 S.Ct. 1319]; *Wilson v. Superior Court* (1983) 34 Cal.3d 777 [195 Cal.Rptr. 671, 670 P.2d 325].)

█ The United States Supreme Court has identified three categories of police contact with persons. The first is referred to as a "consensual encounter" in which there is no restraint on the person's liberty. There need be no objective justification for such an encounter. The second type, called "detention," involves a seizure of the individual for a limited duration and for limited purposes. A constitutionally acceptable detention can occur "if there is an articulable suspicion that a person has committed or is about to commit a crime." The third type involves seizures in the nature of an arrest, which may occur only if the police have probable cause to arrest the person for a crime. (*Florida v. Royer, supra,* 460 U.S. 491; *Wilson v. Superior Court, supra,* 34 Cal.3d 777.)

In *Wilson,* the California Supreme Court held that because Wilson had been detained without an objective, articulable basis for the detention, the detention was a violation of Wilson's Fourth Amendment rights and his consent to a search was not voluntary.

█ The officer here did not have an articulable reason to detain when he turned on his emergency lights. He intended to approach respondent's vehicle simply to see what the occupant was doing. The officer was not possessed of any articulable suspicion that the person was committing any crime or about to do so. He knew that some persons committed crimes in the area, but there was no basis for stating that respondent was doing so.

█ If the officer's contact was simply a consensual encounter, a consent could be solicited without violation of the person's Fourth Amendment rights. If the contact was in the nature of a detention as defined in *Royer,* but without the necessary basis therefor, the consent would not be voluntary and would be inadmissible.

Such an unauthorized seizure occurs when the circumstances surely amount to a show of official authority such that "a reasonable person would have believed that he was not free to leave." (*United States v. Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870]; *Wilson v. Superior Court, supra,* at p. 789.)

█ A reasonable person to whom the red light from a vehicle is directed would be expected to recognize the signal to stop or otherwise be

available to the officer. Any reasonable person in a similar situation would expect that if he drove off, the officer would respond by following with red light on and siren sounding in order to accomplish control of the individual. The trial court so held. This court also comes to the same conclusion, exercising its independent judgment in doing so. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

The circumstances thus show an exercise of official authority such that respondent, under the standard of a reasonable person, would have believed he was not free to leave. He was seized, under the detention category of contact, without the necessary basis therefor, and his consent was therefore involuntary. The evidence produced from the consent was therefore properly suppressed.

The officer's statement as to his state of mind at the time he turned on his emergency equipment, that the driver was not free to leave, is not relevant. His communication of that state of mind by energizing the signal to stop or to stay is relevant.

Appellant's argument of inevitable discovery is not helpful. The issue was not raised during trial and it would be inappropriate to raise it for the first time on appeal. The application of the doctrine of inevitable discovery would involve factual matters which are not in the record and which respondent has not had an opportunity to present. The show of authority began when the red light went on. We have no way of knowing from the record, and respondent has had no opportunity to offer evidence, that respondent would or would not have moved away before the officer approached, had it not been for the signal to remain. (*People* v. *Miller* (1972) 7 Cal.3d 219, 227 [101 Cal.Rptr. 860, 496 P.2d 1228]; *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186, 198 [101 Cal.Rptr. 837, 496 P.2d 1205].)

The motion to suppress was properly granted. Judgment is affirmed.

Panelli, P. J., concurred.

**AGLIANO, J.**—I respectfully dissent. The evidence in this case was simply not the product of a detention, either lawful or unlawful. The magistrate correctly decided this issue at the preliminary hearing when he found that the contraband and gun were discovered independently of any detention.

The undisputed evidence discloses that San Jose Police Officer Saito parked the police vehicle behind and slightly to the left of defendant's parked vehicle. He switched on red and blue lights affixed to the vehicle's grill and a flashing amber light facing rearward. His partner, Officer New-

man, walked to the right side of defendant's vehicle and, on arriving at the rear quarter panel, detected a strong odor of marijuana coming through the open front passenger window, through which he told defendant he smelled marijuana. Defendant spontaneously replied, "[h]ere, let me show you where it's at." Defendant exited the vehicle but then reentered it and retrieved a bag of marijuana from a pouch in the front seat. He handed this bag to the officer and was then arrested.

Officer Saito then asked defendant for permission to search the vehicle. Defendant replied, "[g]o ahead." Officer Newman, with the aid of his flashlight, saw a short straw, which he recognized as drug paraphernalia, on the dash. He opened the vehicle door, entered, and retrieved a bag of cocaine from an open ashtray. A larger bag of marijuana was found in the pocket of a coat in the back seat. Officer Saito then asked defendant for permission to search the trunk. Defendant said "[y]eah, there's nothing else, go ahead." The trunk was opened and found to contain a loaded .357 Smith and Wesson revolver.

While evidence of consent to search is ample, defendant raises no issue, and there should be none, that once the odor of marijuana was lawfully detected the officer could search the entire vehicle without a warrant because at that point he could reasonably believe the vehicle contained contraband. (*Chambers* v. *Maroney* (1970) 399 U.S. 42 [26 L.Ed.2d 419, 90 S.Ct. 1975]; *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157]; *People* v. *Divito* (1984) 152 Cal.App.3d 11 [199 Cal.Rptr. 278].)

However, the trial court determined that while the officers had the right to "investigate" the defendant, presumably by contacting and asking him questions, they had no right to detain him; that the display of emergency lights effected a detention which, although brief, tainted the evidence thereafter secured.

Assuming, for the sake of argument, that the display of lights was a demonstration of authority which restrained defendant's freedom to leave (see *People* v. *Rico* (1979) 97 Cal.App.3d 124, 130 [158 Cal.Rptr. 573]), the evidence establishes that the narcotics and gun were in no manner the product of such restraint but were discovered and seized entirely independently thereof. Put another way, the display of lights did not enable or assist the officers to obtain the evidence.

Our Supreme Court made clear shortly after adoption of the exclusionary rule in California (*People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]) that "illegal conduct that was entirely unrelated and

collateral to the securing of the evidence objected to does not render that evidence inadmissible." (*People* v. *Maddox* (1956) 46 Cal.2d 301, 305 [294 P.2d 6]; see also *United States* v. *Pimental* (1st Cir. 1981) 645 F.2d 85.) "The answer to this question must be sought in the basic reasons for the exclusionary rule. . . . The evidence is excluded 'on the ground that the government must not be allowed to profit by its own wrong and thus encouraged in the lawless enforcement of the law.' " (*Maddox, supra,* at p. 305, citing *People* v. *Martin* (1955) 45 Cal.2d 755, 761 [290 P.2d 855].) As stated by the court in *People* v. *Freeland* (1963) 218 Cal.App.2d 199, 203-204 [32 Cal.Rptr. 132], "[t]he pivotal factor is the causal relationship between the illegality, on the one hand, and the questioned evidence on the other. This causal relationship has been the subject of diverse descriptive phrases such as 'direct result,' 'essential connection,' 'necessary product,' and 'immediate product.' [Citations.] In the oft-quoted phrase of Mr. Justice Frankfurter, the relationship has been likened to 'a fruit of the poisonous tree.' (*Nardone* v. *United States,* 308 U.S. 338, 341 [60 S.Ct. 266, 84 L.Ed. 307].)"

This principle was reaffirmed recently by the United States Supreme Court in *Segura* v. *United States* (1984) 468 U.S. 796 [82 L.Ed.2d 599, 104 S.Ct. 3380]. There, police officers *illegally* entered a dwelling and secured the premises for 19 hours while others in good faith and utilizing information from a source independent of the illegal entry obtained a warrant. The Supreme Court held that contraband there discovered in the course of a search conducted under the warrant had a source independent from and wholly unconnected to the illegal initial entry and was therefore admissible at trial. (*Id.,* at pp. 801-802 [82 L.Ed.2d at p. 615].)

Defendant argues, though without aid of evidence, that he would have driven off but for the display of red and blue lights and inferably, the marijuana odor which triggered cause to arrest would have dissipated. The Supreme Court in *Segura* confronted with a similar argument, adopted the view that such a theory was "prudentially unsound" and rested on "wholly speculative assumptions." The court stated: "We agree fully with the Court of Appeals that the District Court's suggestion that Colon and her cohorts would have removed or destroyed the evidence was pure speculation. Even more important, however, we decline to extend the exclusionary rule, which already exacts an enormous price from society and our system of justice, to further 'protect' criminal activity, as the dissent would have us do. [¶] It may be that, if the agents had not entered the apartment, petitioners might have arranged for the removal or destruction of the evidence, and that in this sense the agents' actions could be considered the 'but for' cause for discovery of the evidence. But at this juncture, we are reminded of Justice Frankfurter's warning that '[s]ophisticated argument may prove a [causal]

connection between information obtained through [illegal conduct] and the Government's proof,' and his admonition that the courts should consider whether '[a]s a matter of good sense . . . such connection may have become so attenuated as to dissipate the taint.' *Nardone,* 308 US, at 341, 84 L Ed 307, 60 S Ct 266. The essence of the dissent is that there is some 'constitutional right' to destroy evidence. This concept defies both logic and common sense." (*Id.,* at p. 803 [82 L.Ed.2d at p. 616].)

In my view of the undisputed evidence the police officer would have detected the odor of contraband, whether the red light had been turned on or not. Defendant's vehicle was parked with its lights off and motor stopped. To suggest, as does defendant, that he might have driven from the scene within the few seconds it took the officer to walk a few feet after the red light was turned on is sophistry.

The People offer the alternative theory of "inevitable discovery" to justify admissibility of the evidence. That theory comes into play when it is shown that evidence, unlawfully obtained in the first place, would have ultimately and inevitably been discovered by lawful means. (*Nix* v. *Williams* (1984) 467 U.S. 431 [81 L.Ed.2d 377, 104 S.Ct. 2501].) The theory is unnecessary and inapplicable when, as here, the evidence is lawfully found and seized in the first instance.

I would reverse the superior court's order suppressing the evidence.