Filed 6/25/13  P. v. Guyette CA5

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHARLES ELLIOT GUYETTE,<br><br>Defendant and Appellant. | F065046<br><br>(Super. Ct. No. CRM020110A)<br><br>**O P I N I O N** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  John D. Kirihara, Judge.

Tutti Hacking, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Wiseman, Acting P.J., Cornell, J., and Poochigian, J.

Charles Elliot Guyette pled no contest to three felony counts: commercial burglary (Pen. Code, § 459),[1] possession of stolen property (§ 496, subd. (a)) and forgery (§ 475, subd. (c)), and admitted a prior strike conviction. In exchange, the People agreed to the dismissal of two prior prison term enhancements and a stipulated sentence of five years four months, which the court subsequently imposed. On appeal, Guyette contends the trial court erroneously denied his suppression motion because the incriminating evidence was seized while he was illegally detained, substantial evidence does not support the finding he consented to be searched, and the resulting arrest was illegal. Thus, all fruits of the detention, including his statements and the incriminating items taken from his pockets, should have been suppressed. We disagree and affirm.

## FACTS

On October 22, 2011, at 10:45 p.m., Merced Police Officer Leon Pintabona was patrolling when he was dispatched to investigate an alarm[2] at a business that was closed. He was just a block away so he responded immediately. When he arrived, he saw Guyette and co-defendant Hernandez walking at a normal pace directly in front of the building. Pintabona parked his patrol car, approached the men and asked if he could speak with them. Hernandez said "sure" and both men walked over to him. Pintabona asked the men to sit on the curb and "obtained" Guyette's identification. Guyette testified he gave his identification to Pintabona and did not recall getting it back. Pintabona used the identification to fill out a card. About thirty seconds after Pintabona arrived, Officer Gonzales arrived. Gonzales told Pintabona there was a broken window on the side of the building and the back door was open. Pintabona had noticed that

---

[1]     All statutory references are to the Penal Code.

[2]     Guyette assumes it was a silent alarm. The record does not disclose whether it was silent or not.

2

Guyette had a small cut on his left forearm. About a minute and a half to two minutes after he had initially contacted the men, Pintabona asked Guyette for permission to search him; Guyette responded, "sure." Guyette had a pocketknife, a bent Phillips head screwdriver and seven screws in his pocket. The seven screws matched the screws missing from the broken window at the business. Pintabona did not recall Guyette doing anything unusual with his hands, which were on his lap. Pintabona arrested Guyette after comparing the screws in Guyette's pocket with those in the building's window.

Guyette testified that he has a tracheostomy and must cover the tracheostomy opening with his finger in order to talk. His speech is "very minimal" absent that maneuver. Guyette denied that he had agreed to be searched and did not recall whether Pintabona returned his identification to him.

The trial court denied the motion to suppress concluding that this was a consensual encounter and that Guyette had consented to the search.

Evidence at the preliminary hearing indicated that the property stolen from the business—a law office—was found in a vacant unit in the adjacent apartment complex where Hernandez lived.

## DISCUSSION

Guyette contends (1) he was detained when Pintabona asked him to sit on the curb and to provide his identification, (2) there was no reasonable suspicion to detain him, (3) substantial evidence does not support the finding he consented to the search, and (4) as a result, all evidence seized should have been suppressed. The People respond (1) Guyette was not detained, (2) if he was, the detention was supported by reasonable suspicion, (3) substantial evidence supports the consent finding, and (4) Guyette cannot challenge his arrest now because he did not do so in the trial court.

3

### 1. Was Guyette Detained?

*Standard of Review*

On review of the denial of a motion to suppress, we defer to the trial court's factual findings, where supported by substantial evidence, but exercise our independent judgment to determine whether, on the facts found, the search and seizure were reasonable under the Fourth Amendment. (*People v. Camacho* (2000) 23 Cal.4th 824, 830.)

*Detention*

Not every encounter between a police officer and an individual involves a seizure. A seizure occurs when the officer, "by means of physical force or show of authority," restrains the individual's freedom of movement. Whether a seizure has occurred is determined by an objective test that asks not whether the individual perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person. When police engage in conduct that would communicate to a reasonable person that he was not free to ignore the police presence and go about his business, there has been a seizure. (*People v. Celis* (2004) 33 Cal.4th 667, 673.)

In this case, Officer Pintabona testified he asked if he could speak with Guyette and Hernandez. Hernandez said "sure" and both men walked over to him. Pintabona asked the men to sit on the curb and "obtained" Guyette's identification, which he retained as he filled out an identification card.

The parties disagree as to whether Guyette was detained when the officer asked him to sit on the curb and obtained his identification. Guyette contends he was detained and relies on two cases. In *People v. Vibanco* (2007) 151 Cal.App.4th 1, 9, the prosecution conceded that a passenger in a stopped car was detained when the officers directed him to sit on the curb. In *People v. Castaneda* (1995) 35 Cal.App.4th 1222,

4

1227 the court held that while the suspect was not detained simply because the officer requested identification from him, once he complied and submitted his identification card to the officer, a reasonable person would not have felt free to leave.

The People respond that Guyette's compliance with the officer's request that he sit on the curb and provide identification did not amount to a detention. They cite *People v. Cartwright* (1999) 72 Cal.App.4th 1362, 1370, *Immigration & Naturalization Service v. Delgado* (1984) 466 U.S. 210, 216 (*Delgado*) and other cases, which held that where a suspect's decision to cooperate with an officer's request for information and identification was consensual, it did not constitute a seizure. The United States Supreme Court noted that while most citizens will respond to a police request, that they do so without being told they are free not to respond, does not eliminate the consensual nature of the response. Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, the questioning does not result in a detention under the Fourth Amendment. (*Delgado*, *supra*, 466 U.S. at p. 216.)

The facts of this case present a close question. The officer testified he asked Guyette to sit on the curb and "obtained" his identification card and "kept it while [he] was filling out the card just to make sure the information was correct." While Guyette's compliance with the officer's request that he sit on the curb and identify himself did not transform the encounter into a detention, once the officer retained Guyette's identification document, a reasonable person would not have believed he was free to get up from the curb and walk away. Accordingly, contrary to the trial court, we conclude Guyette was detained.

## 2. Was the Detention Supported by Reasonable Suspicion?

A police officer may lawfully detain a person if the officer knows of specific articulable facts causing him to suspect that the person detained may be involved in some

activity relating to crime. (*In re Tony C.* (1978) 21 Cal.3d 888, 893.) The guiding principle is the reasonableness of the particular governmental intrusion. In making our determination, we examine the totality of the circumstances. Where a reasonable suspicion of criminal activity exists, the public rightfully expects a police officer to inquire into such circumstances. (*People v. Wells* (2006) 38 Cal.4th 1078, 1087.) The possibility of an innocent explanation does not negate a reasonable suspicion of criminal conduct. The principal function of the officer's investigation is to resolve that ambiguity and establish whether the activity is in fact legal or illegal. (*In re Tony C.*, *supra*, 21 Cal.3d at p. 894.)

Guyette submits when Pintabona first responded to the scene, he and Hernandez were merely walking along the sidewalk in an unhurried manner in front of the business, which was nearby an apartment complex. There was nothing that would make a reasonable police officer believe that he was involved in a burglary. He cites *People v. Roth* (1990) 219 Cal.App.3d 211, *People v. Bailey* (1985) 176 Cal.App.3d 402 and *In re Tony C.*, *supra*, 21 Cal.3d 888. In *Roth*, the court concluded there was no reasonable suspicion to detain Roth where the only ground for the detention was Roth's 1:20 a.m. presence in the deserted parking lot of a shopping center whose businesses were closed. (*People v. Roth*, *supra*, 219 Cal.App.3d at p. 215.) Likewise in *Bailey*, the officer did not have an articulable reason to detain Bailey when he saw Bailey's car in the parking lot of a Sears store that was closed, even though the officer was aware that persons from a nearby establishment would come to that area to ingest drugs in their cars. While the officer knew that some persons committed crimes in the area, he had no basis for believing that Bailey was doing so. (*People v. Bailey*, *supra*, 176 Cal.App.3d at pp. 404, 405.) Finally, in *Tony C.*, the court held that it was not reasonable to suspect that any minor seen walking along a public street during school hours was committing crimes. Nor was it reasonable to suspect Tony C. and his companion, who were Black, of

6

criminal activity simply because the officer was aware that several burglaries had occurred in the neighborhood and that the suspects were "three male [B]lacks" of unspecified ages.  (*In re Tony C.*, *supra*, 21 Cal.3d at pp. 897-898.)

The cases Guyette cites are distinguishable because there was no indication of any criminal activity in progress when the officers detained the defendants.  In contrast, in this case, Officer Pintabona was dispatched to the closed business at 10:45 p.m. in response to an activated security alarm—an indication of criminal activity in progress.  As Pintabona drove up, he saw Guyette and Hernandez walking in front of the business.  Pintabona asked if he could speak to the men, had them sit on the curb, and asked for their identification.  As he did so, he noticed that Guyette had a small cut on his forearm.  Meanwhile, Officer Gonzales arrived and discovered a broken window and an open door at the back of the business.  Pintabona asked if he could search Guyette about a minute and a half or two minutes after he had him sit on the curb.  The search turned up items that linked Guyette to the break-in.

This case is analogous to *People v. Lloyd* (1992) 4 Cal.App.4th 724, in which the court held it was objectively reasonable for the officers to suspect Lloyd was involved in a burglary.  The officers had found Lloyd standing alone at 4:00 a.m. next to a business in which a silent alarm had just been triggered.  When Lloyd saw the officers, he began walking away.  On these facts, the officers acted reasonably in stopping and detaining Lloyd as a possible burglary suspect.  (*Id.* at pp. 733-734.)

The facts of this case present a typical on-the-street consensual encounter that developed into a detention and then into an arrest.  First, Officer Pintabona reasonably approached and questioned Guyette to determine if he had any information in regard to or in connection with the business alarm.  Second, while speaking with Guyette, Pintabona saw that Guyette had a small—apparently fresh—cut on his arm.  And, within two minutes of the initial encounter, Pintabona discovered that Guyette had suspicious items

7

in his pocket—a bent screwdriver and seven screws. Under the circumstances, Guyette's presence in front of the business whose alarm had been triggered, provided reasonable suspicion to detain Guyette and investigate further.

### 3. Was Consent to Search Voluntary?

Guyette contends the trial court erred in finding that he consented to the search for two reasons. First, his consent to the search was tainted by his illegal detention and, second, substantial evidence does not support the trial court's finding. As to his first contention, it fails because we have concluded that Guyette was legally detained. As to the second contention, the prosecution bears the burden of showing the defendant's consent to search was voluntary and not a mere submission to an assertion of authority. Whether the consent was voluntary presents a question of fact. We uphold the trial court's express or implied findings on the issue where supported by substantial evidence. (*People v. Miller* (1999) 69 Cal.App.4th 190, 202-203.)

Guyette contends the record does not support the finding that he consented to the search by stating "sure" when Pintabona asked if he could search him. This is because Pintabona also testified that Guyette did so while sitting at the curb with his hands on his lap. However, Guyette testified he could speak only if he covered his tracheostomy opening in his neck with his finger. Therefore, he could not have said "sure" and consented to the search while his hands were in his lap. That evidence, coupled with Guyette's denial that he had consented to be searched, leads to the conclusion there is no substantial evidence that he consented to the search of his person.

We disagree. Guyette testified he did not consent to be searched, Pintabona testified Guyette did consent to be searched, and the trial court found that Guyette had consented to the search of his person. If there is conflicting testimony, the reviewing court accepts the trial court's resolution of disputed facts if those facts are supported by the record. (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) Guyette, in effect, argues

8

that the court erred in finding the officer credible because it was impossible for him to talk while his hands were on his lap as the officer testified they were.

Guyette reads too much into the sparse record. Officer Pintabona was never asked whether Guyette used his hand to cover his tracheostomy opening while consenting to the officer's request to search. Rather, defense counsel asked Pintabona if Guyette was "doing anything with his hands" while the officer was speaking to him. Pintabona responded, "No different than anybody else. I mean, he wasn't … shoving [them] into his pockets. I don't understand what you're referring to." Defense counsel then asked, "Were his hands kind of by his waist as he was speaking to you?" Officer Pintabona responded, "They were on his lap."

From this exchange, it is not clear that Guyette did not briefly bring a hand to his neck when consenting to be searched. Further, Guyette did not say speech was impossible, rather he testified his speech was "very minimal" if he did not block the tracheostomy opening with his finger. Pintabona testified Guyette consented to the search by saying "sure," a minimal response. Thus, Guyette has failed to show that the trial court's finding was not supported by substantial evidence or that the trial court erred in finding that he consented to be searched.

Finally, regardless of whether Guyette properly challenged the legality of his arrest in the trial court, his claim on appeal fails because his arrest did not result from an illegal detention or search. Accordingly, the trial court did not err in denying his motion to suppress evidence.

**DISPOSITION**

The judgment is affirmed.

9