Filed 4/22/14  P. v. Brown CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHAUNTREL RAY BROWN,<br><br>    Defendant and Appellant. | D064641<br><br><br>(Super. Ct. No. SCS264898) |

APPEAL from a judgment of the Superior Court of San Diego County, Ana L. Espana, Judge.  Affirmed.

Henry C. Coker, Public Defender, Randy Mize, Chief Deputy, Emily Rose Weber and Robert L. Ford, Deputy Public Defenders, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

Shauntrel Ray Brown entered a guilty plea to one count of driving with a measurable blood alcohol level of 0.08 percent or greater (Veh. Code, § 23152,

subd. (b)).  Brown admitted that he had suffered three or more prior convictions for driving under the influence within the previous 10 years and that his blood alcohol at the time of this offense was 0.15 percent or greater (Veh. Code, §§ 23550, subd. (a); 23578).

The court sentenced Brown to two years in local custody pursuant to Penal Code section 1170, subdivision (h).

Brown appeals contending the trial court erred in denying his motion pursuant to Penal Code section 1538.5 to suppress evidence on Fourth Amendment grounds.  We will find the trial court properly decided the officer had reasonable suspicion to detain Brown and that the court correctly concluded that in any event, Brown was already stopped before the deputy attempted to contact him.

In our analysis of the issues presented in this case we conclude that when a vehicle is already stopped, without police action, merely activating emergency lights on a police vehicle, without more, does not constitute a seizure within the Fourth Amendment. Accordingly, we will disagree with the decision in *People v. Bailey* (1985) 176 Cal.App.3d 402 (*Bailey*), on which Brown relies.

STATEMENT OF FACTS

Since the only issues raised in this appeal relate to the denial of the motion to suppress evidence we will recite the facts from the transcript of that motion.

On the evening of May 26, 2013, a 911 call was made to the San Diego County Sheriff's office reporting that a fight was taking place in an alley in the City of Imperial Beach.  The recording of the call was played for the court during the suppression motion.

2

The caller, who provided his location to the dispatcher, reported a fight involving a number of people in an adjacent alley. There was a reference in the call to the presence of a loaded gun possibly involved in the affray. The Sheriff's dispatcher alerted Deputy Geasland about the "fight call" and the location. The deputy, in a marked patrol car, arrived at the scene within three minutes of the call.

The deputy drove down the alley where the fight was reportedly taking place. He did not see any people in the alley, however, he encountered Brown who was driving his car out of the alley. The deputy called out to Brown as he drove by asking, "Hey. Hey. Did you see a fight?" Brown did not respond and continued out of the alley. The lack of response and discovering Brown in the "exact location" of the reported fight aroused the deputy's suspicion.

Deputy Geasland was able to turn his car around and went in the direction he had seen Brown take. When he got out of the alley, Geasland observed Brown's car parked along the side of the road with the brake lights on. Geasland testified that he was concerned because the call had mentioned a loaded firearm and was considering the possibility that Brown had been injured. Therefore, Geasland pulled his patrol car in behind Brown's parked car and turned on the patrol car's overhead emergency lights.

The deputy then approached the car and made contact with Brown. He immediately noticed that Brown appeared to be intoxicated. His eyes were watery and bloodshot. He was mumbling and appeared flustered and upset. Geasland could smell the odor of alcohol and asked Brown if he had been drinking and if he had been involved in a fight. Brown answered affirmatively to both questions.

3

Geasland subsequently called a traffic unit to conduct further investigation of the possibility that Brown had been driving under the influence.

Deputy Geasland was the only witness to testify at the suppression motion.

The trial court, after reviewing the 911 call and the testimony of Deputy Geasland, concluded that Geasland was credible and accepted his testimony as true. The court then denied the motion to suppress.

DISCUSSION

I

*DID THE DEPUTY HAVE REASONABLE SUSPICION OF CRIMINAL ACTIVITY?*

Brown contends that we must treat the 911 call as an anonymous tip and further argues that the call, plus the deputy's observations do not separately or collectively amount to reasonable suspicion as required by *Terry v. Ohio* (1968) 392 U.S. 1. We disagree with Brown's analysis. The call from an identified citizen reporting contemporaneous observations is entitled to more credence than an anonymous tip, absent some circumstance that may cause police to question the caller's reliability. The deputy's immediate arrival on the scene and the nature of the reported activity, in our view gave the deputy sufficient articulable facts to support reasonable suspicion that criminal activity was taking place. Hence, the actions that followed were lawful.

A. Legal Principles

*1. Standard of Review*

In ruling on a motion to suppress evidence on Fourth Amendment grounds, the trial court first determines the facts underlying the police action and then must apply the

4

law to those facts in order to resolve the dispute.  (*People v. Lawler* (1973) 9 Cal.3d 156, 160.)  On appeal we review the trial court's factual findings under the deferential substantial evidence standard of review.  Once we determine the trial court's factual findings are supported in the record, we independently review the legal issues arising from those facts.  (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597; *People v. Williams* (1988) 45 Cal.3d 1268, 1301; *People v. Miranda* (1993) 17 Cal.App.4th 917, 922.)

### 2.  Reasonable Suspicion

Police may temporarily detain a person to investigate possible criminal activity where the officer can point to specific facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person to be detained may be involved in criminal activity.  (*People v. Souza* (1994) 9 Cal.4th 224, 231.)  A finding of reasonable suspicion of criminal activity requires less information than a finding of probable cause.  (*Alabama v. White* (1990) 496 U.S. 325, 330.)  Police may base a finding of reasonable suspicion on their own observations together with information from other sources.

In *Alabama v. White*, *supra*, 496 U.S. 325, the court held that an anonymous tip, together with partial corroboration of the tip by police, could provide sufficient information to justify an investigative detention.  In evaluating police action courts can consider the reliability of the information police receive from others.[1]  The evaluation of

---

1      In *Illinois v. Gates* (1983) 462 U.S. 213, 230, the court upheld a finding of probable cause, based on an anonymous tip, without information about the tipster's source of knowledge, in light of the corroboration done by law enforcement.

the source of information depends on the nature of the source of the information and the detail which it provides. Anonymous tips present the problem of lack of knowledge and in some instances the source of the tipster's information. As a general proposition, information from an identified citizen, based on that person's own observations, is at least presumptively reliable, in the absence of any circumstance that may call the person's reliability into question. (*People v. Brueckner* (1990) 223 Cal.App.3d 1500, 1504-1505.)

In *People v. Dolly* (2007) 40 Cal.4th 458, 461 (*Dolly*), the court considered a case involving an anonymous tip about an assault with a deadly weapon which the caller had observed. In that case the caller gave a detailed account of what had been observed and particularly described the alleged assailant. (*Id.* at pp. 464-465.) The court considered the nature of the criminal activity described, which the court found to present an urgency for a police response. The court in *Dolly* distinguished its case from the circumstances of *Florida v. J.L.* (2000) 529 U.S. 261, 273 (*J.L.*), in which the United States Supreme Court found the anonymous tip was not sufficiently corroborated by police before restraining the suspect. In *J.L.* the tip described a teenaged suspect who was standing on a street corner. The tip alleged the minor had a gun under his shirt. Police accosted the minor and frisked him without any information beyond the tip itself.

The court's analysis in *Dolly, supra,* 40 Cal.4th 458, 463, included an evaluation of various forms of tips to police. The court reasoned that tips reporting observations of on-going dangerous activity with precise information have some enhanced credibility as opposed to a generic anonymous tip, citing *People v. Wells* (2006) 38 Cal.4th 1078, 1083 (*Wells*). In *Wells* the court found an anonymous tip describing dangerous, reckless

6

driving taking place could justify an investigative detention due to the exigent nature of the risk presented by the alleged conduct.

The court in *Dolly, supra,* 40 Cal.4th 458, continued with its analysis and concluded that calls placed through the 911 system were entitled to some weight because the caller faces a risk that police will be able to discover the caller's identity. Thus, such a call is entitled to greater consideration than the generic anonymous tip. (*Id.* at p. 467.)

## B.  Analysis

Brown argues that the "anonymous" call, together with the deputy's observations does not provide reasonable suspicion to justify a detention. We disagree.

First, as Brown acknowledges, "the 911 call concerning a fight was more reliable than a truly anonymous tip because the dispatcher knew the location of the call and could hear some signs of an argument over the phone." Indeed, not only did the caller provide his own precise location, it is clear, at least at the time of the motion to suppress that defense counsel knew the identity of the caller, because counsel identified the caller in the points and authorities filed in the reply papers. The call in this case was completely different from the anonymous calls in *J.L, supra,* 529 U.S. 261 and *Alabama v. White*, *supra,* 496 U.S. 325. Here an identified citizen called and reported potentially violent activity taking place outside his home. Activity the dispatcher could hear. The Sheriff was entitled to presume the caller to be reliable and the fact that sounds from the fight were audible on the recording added to the reliability of the report.

Brown argues that since the deputy did not personally hear the call the deputy could not personally assess the reliability of the informant, thus the deputy could not rely

7

on it. Understandably Brown cites no authority for the proposition that an officer, acting on directions from a dispatcher, must personally assess the reliability of the person who made the original 911 report.

In this case the deputy arrived within three minutes of the citizen's call. The record shows the call was entitled to greater weight than an anonymous tip and that it reported potential violent activity involving a firearm. Thus, similar to the reports in *Dolly, supra*, 40 Cal.4th at page 464 and *Wells, supra*, 38 Cal.4th at page 1083, the report in the instant case was entitled to be deemed reliable observations of a percipient witness. The deputy was entitled to act on the dispatcher's information.

When the deputy arrived he found Brown leaving the exact location of the reported fight. Brown did not respond to the deputy's questions when he passed him. As the record shows the deputy became suspicious and was concerned that since a firearm had been reported, Brown may have been injured or involved in the fight.

Upon leaving the alley, after Brown had done so, the deputy discovered Brown's car parked along the side of the road with the brake lights on. This discovery heightened the deputy's suspicions as well as concerns for Brown's safety. As the phrase was used in *Terry v. Ohio, supra*, 392 U.S. at page 19, the officer had sufficient facts to support reasonable suspicion that "criminal activity may be afoot." We conclude the deputy had sufficient information to justify detaining Brown at the point he observed Brown's car parked outside the alley.

*WHEN WAS BROWN DETAINED?*

Brown asserts he was detained the moment the deputy turned on the overhead lights on the patrol car, even though Brown had previously stopped on his own. Brown relies primarily on the opinion of the Sixth District Court of Appeal in *Bailey, supra,* 176 Cal.App.3d 402. There a divided panel of the court concluded that: "A reasonable person to whom the red light from a vehicle is directed would be expected to recognize the signal to stop or otherwise be available to the officer. Any reasonable person in a similar situation would expect that if he drove off, the officer would respond by following with red light on and siren sounding in order to accomplish control of the individual." (*Id.* at p. 406.)

The dissent in *Bailey* acknowledged that when a person yields to a display of emergency lights, that the person has been seized. The dissent noted, however, there was no evidence the defendant yielded to the show of authority as the defendant in that case was already stopped without any reference to police action. (*Bailey, supra,* 176 Cal.App.3d at pp. 407-408 (dis. opn. of Agliano, J.).)

Since the decision in *Bailey, supra,* 176 Cal.App.3d 402, the Sixth District has somewhat narrowed or distinguished its holding. In *People v. Perez* (1989) 211 Cal.App.3d 1492, 1495-1496 (*Perez*), the dissenting justice in *Bailey* was the author of the unanimous opinion for the court. There the court dealt with a case where the police did not turn on the red lights when approaching a stopped car. Instead, the police used their spotlight and high beams to illuminate the stopped vehicle. The court observed:

"Unlike *Bailey,* the officer here did not activate the vehicle's emergency lights; rather, he turned on the high beams and spotlights only. These differences are substantial because the conduct of the officer here did not manifest police authority to the degree leading a reasonable person to conclude he was not free to leave. While the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny, such scrutiny does not amount to a detention." (*Id.* at p. 1496.)

The basic thrust of the analysis in *Bailey* is that red lights are a showing that police will chase you if you do not remain stopped. The analysis does not take into account, as did the dissent, that there needs to be some evidence that the person yielded to that show of authority. In the case of a stopped vehicle approached by police, we believe there must be something more than merely activating the red lights to accomplish a detention, because, as the majority in *Bailey, supra,* 176 Cal.App.3d 402 acknowledged, if you do not yield, *police may chase you.*

After *Bailey, supra,* 176 Cal.App.3d 402 and *Perez, supra,* 211 Cal.App.3d 1492 were decided, the U.S. Supreme Court decided *California v. Hodari D.* (1991) 499 U.S. 621 (*Hodari D.*). In that case, police officers wearing jackets which displayed the word "Police" approached a group of young males. (*Id.* at p. 622.) Upon seeing the approaching officers the group moved away. Police called out to the group that they were police officers and demanded the young men to stop. Notwithstanding the officer's clear showing of authority and their demands that the group stop, Hodari D. took flight. Police gave chase and just prior to being tackled by a police officer, Hodari jettisoned a package containing narcotics. (*Id.* at pp. 622-623.) Thus, the issue before the court was

10

when was the defendant seized. The state appellate court held, consistent with *Bailey* that the defendant was seized when the officers made their unequivocal demands that he stop. Since the state court found there was not reasonable suspicion to detain Hodari D. at the time of the demand, the state court concluded the narcotics were found as the result of an unlawful seizure. The high court reversed, concluding that a mere showing of authority is not enough to constitute a seizure. Rather, the court held that a seizure under the Fourth Amendment only occurs when a person is physically prevented from leaving, or when the person yields to a showing of police authority. (*Hodari D., supra,* at pp. 626-629.)

We disagree with the analysis of the majority in *Bailey, supra,* 176 Cal.App.3d 402 and agree with the dissenting opinion in that case. We recognize the court's efforts in *Perez, supra,* 211 Cal.App.3d 1492 to distinguish *Bailey*, but respectfully reject the notion that there is a material difference between the situation in which a police car pulls in behind a stopped car and activates red lights and one in which the same car uses high beams and spotlights. In both cases there is an apparent showing of police presence and police interest in the occupants of the stopped vehicle. In both instances there is a clear likelihood that police will give chase if the person drives off. However, as the court in *Hodari D., supra,* 499 U.S. 621 has made clear, it is still necessary to find that citizen yielded to that show of authority. As young Hodari discovered, police will give chase, but mere demands, or even pursuit are not seizures until the citizen accepts the command, either direct or implied, or when the police succeed in restraining that person.

11

Applying *Hodari D., supra*, 499 U.S. 621, to the case before us, the record supports the trial court's finding that Brown was not stopped by police nor was he detained by the deputy until after the deputy approached the car and immediately observed clear indications of intoxication. In any event, the deputy had reasonable suspicion of criminal activity as soon as he pulled his car to a stop behind Brown's car. The trial court correctly denied the motion to suppress.

DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


McINTYRE, J.

O'ROURKE, J.


12