Filed 8/21/14  P. v. Watson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B249637 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA081638) |
| v. | |
| DARNELL BYRON WATSON, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County.  Mark E. Windham, Judge.  Affirmed.

Philip Kent Cohen, APC, Philip Kent Cohen, Michelle A. Mabugat, and Leonard A. Manalo for Defendant and Appellant Darnell Byron Watson.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Jonathan J. Kline, Deputy Attorneys General for Plaintiff and Respondent.

\* \* \* \* \* \*

Following denial of his motion to suppress evidence made initially at the preliminary hearing and then renewed in the trial court under Penal Code[1] section 1538.5, subdivision (i), appellant Darnell Byron Watson pled no contest to possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)). The court granted Proposition 36 probation but stayed execution pending appellate review.

On appeal, appellant challenges the trial court's denial of the renewed suppression motion, arguing the trial court erred because he was unlawfully detained. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL STATEMENT[2]

**Prosecution Case**

At approximately 12:50 a.m. on the morning of June 6, 2012, Culver City Police Officer Chris Horii and his partner, Officer Ferrier, were on patrol in a vehicle in the parking lot of the Ramada Hotel. The area was known for prostitution and narcotics activities. As Officer Ferrier drove down the driveway of the hotel parking lot, Officer Horii saw appellant walking in front of the vehicle with his back towards them. Officer Horii could see appellant in the headlights of the police vehicle. When appellant was illuminated by the headlights he looked over his shoulder at the police vehicle. Appellant then removed an object from his front right pocket and tossed it to his right between two parked cars. The officers suspected appellant had littered and drove up to him and spoke with him. Appellant denied throwing anything. Officer Horii searched the area where he saw appellant throw the object and found a one-by-two-inch white paper bindle containing cocaine.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  Because appellant's initial motion to suppress evidence was brought at the preliminary hearing, we summarize the facts adduced during that hearing. (§ 1538.5, subd. (i).)

**Defense Case**

Appellant testified that he was walking towards his car in the parking lot of the Ramada Hotel when the police vehicle entered the driveway behind him. The police vehicle had both the headlights and the red and blue overhead lights on. The vehicle's siren was not on. Appellant testified that he turned around and "made eye contact with them or, you know, with the car." When he turned back to continue walking the officers put the side-spotlight on him, and he heard them telling him to "stop." Appellant did not stop but continued walking. Appellant testified that he did not want to be arrested with drugs on him so he reached into his pocket and tossed away a bindle of cocaine. He lied to Officer Horii when asked if he had thrown anything away.

**Motion to Suppress**

At the conclusion of the preliminary hearing, appellant moved to suppress evidence of the cocaine pursuant to section 1538.5. Defense counsel argued that the facts as stated by appellant that the officers had illuminated appellant using their police vehicle's spotlight and red and blue lights and ordered him to stop constituted a seizure. He argued that *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry*) supported his contention and that Officer Horii's account of the incident was not believable. He argued that "the most credible version of events factually" involved appellant throwing the cocaine away while he was "lit up." Defense counsel argued that appellant was detained at that point and what happened after that was irrelevant.

The prosecutor argued that appellant's testimony that he tossed the drugs away while the police were "lighting him up" was illogical and contrary to his desire not to be arrested for possession of narcotics. The prosecutor argued that even if the court were to find a show of authority, there was no basis for finding an unlawful detention because appellant did not stop and submit to any authority until after he tossed away the bindle of cocaine. The prosecutor distinguished *Garry* by clarifying that the court in that case found that the defendant did submit to the officer's asserted authority resulting in an unlawful detention.

3

The magistrate denied appellant's motion to suppress. The magistrate stated that it seemed to him that "the officer illuminated [appellant]" and it did not make sense that appellant "was commanded to stop before he threw the object." The magistrate stated that his "sense [was] that [appellant] was illuminated with headlights, with the overhead light as well." The magistrate found no basis for a violation of appellant's 4th Amendment rights because it was a lawful stop. Defense counsel asked if the court was making a determination of how appellant was illuminated, and whether appellant turned around and looked at the officer. The magistrate stated he was not. The magistrate believed there was no verbal command to appellant, that he threw the cocaine when he was illuminated, and the illumination did not "reach[] *Garry*." When defense counsel stated that illumination was a significant issue under *Garry,* the magistrate responded, "I can't tell about the lights." The magistrate concluded by stating the police officer's account of the incident was more credible and that was the basis for his ruling.

Appellant renewed the suppression motion in the trial court.[3] No testimony or evidence was presented at the hearing. Defense counsel argued that the evidence should be suppressed based upon the magistrate's finding at the preliminary hearing that Officer Horii had activated his overhead lights. The trial court disagreed with that characterization of his earlier finding and clarified that he did not believe the officers activated their red and blue lights. The trial court repeated his previous findings that appellant's illumination was within the law, the officers did not do anything to show authority, and the stop was lawful. The trial court further stated that he did not think appellant's version of the events was "entirely correct" but, even if it was correct the motion should be denied pursuant to *California v. Hodari D.* (1991) 499 U.S. 621 (*Hodari*).)

---

[3]    The trial court judge had previously sat as the magistrate at the preliminary hearing.

4

## DISCUSSION

### Appellant's Motion to Suppress Was Properly Denied

Appellant contends the trial court erred in denying his motion to suppress because he was unlawfully detained before he threw away the drugs. He argues the magistrate's factual findings demonstrate that appellant was detained when the police officers activated the vehicle's overhead lights.

Under the applicable standard of review, we determine that the trial court did not err in denying appellant's motion to suppress evidence. "'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.'" (*People v. Redd* (2010) 48 Cal.4th 691, 719 (*Redd*).) "If there is conflicting testimony, we must accept the trial court's resolution of disputed facts and inferences, its evaluations of credibility, and the version of events most favorable to the People, to the extent the record supports them. [Citations.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) "'In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]' [Citations.]" (*Redd, supra,* 48 Cal.4th at p. 719, fn. omitted.)

Slightly altering this procedure, in cases like this one, where "a magistrate rules on a motion to suppress . . . raised at the preliminary examination, he or she sits as the finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences. In reviewing the magistrate's ruling on a subsequent motion under Penal Code section 995, the superior court sits as a reviewing court - it must draw every legitimate inference in favor of the information, and cannot substitute its judgment for that of the magistrate on issues of credibility or weight of the evidence. On review of the superior court ruling by appeal or writ, we in effect disregard the ruling of the superior court and directly review the determination of the magistrate. In doing so we draw all presumptions in favor of the magistrate's express or implied factual determinations and

5

must uphold them if they are supported by substantial evidence." (*People v. Shafrir* (2010) 183 Cal.App.4th 1238, 1244-1245 [fn. omitted].)

In arguing the initial contact was a detention, appellant relied on *People v. Bailey* (1985) 176 Cal.App.3d 402 (*Bailey*) in the lower court and does so again on appeal. In *Bailey*, an officer pulled his vehicle behind a car occupied by a single person parked in a department store parking lot; this location was frequented by drug users. The police vehicle's red and blue front emergency lights, as well as amber rear lights, were activated and the officer approached on foot. Within a few feet of the car, the officer smelled marijuana, which caused the officer to ask for consent to search the car. The occupant consented and the search produced contraband. The officer testified that as he approached the car, the occupant was not free to leave. A motion to suppress the evidence was granted by the trial court on the basis that the consent was not freely given. (*Bailey, supra*, 176 Cal.App.3d at p. 404.) The majority of the appellate court affirmed, finding the consent was involuntary because the activation of the emergency lights and other circumstances demonstrated an exercise of official authority that vitiated against voluntariness. (*Bailey, supra,* at p. 406.) Additionally, the appellate court rejected the People's claim that the evidence would inevitably have been discovered (presumably on the basis that the officer's smelling of marijuana would have justified the search as based on probable cause and incident to lawful arrest) because it was inappropriate to raise that argument for the first time on appeal. (*Ibid.*)

The key similarity here, asserts appellant, is the activation of the overhead emergency lights, directed at appellant, as a manifestation that he is not free to leave. But the trial court's factual findings which we are bound to accept highlights the significant difference between *Bailey* and the present case, which is that the police officers here did not activate their emergency overhead lights and did not engage in any conduct that amounted to a show of authority. Officer Horii testified that appellant was illuminated by the headlights of the police vehicle as they drove through the parking lot at approximately 12:50 a.m. Officer Horii was asked to clarify what he meant by "headlights" and if he

6

and his partner intended to "illuminate" appellant. He reiterated that appellant was illuminated *only* by the light from the headlights of the vehicle due to normal operation. The magistrate found Officer Horii's testimony to be credible.

Appellant focuses exclusively on the magistrate's statement that his "sense [was] that [appellant] was illuminated with headlights, *with the overhead light as well*." He argues that for purposes of the appeal the trial judge and the magistrate are viewed as separate judicial officers, and the trial court is bound by the factual findings of the magistrate. Appellant's argument although technically correct ignores one significant fact. The judge who denied the renewed motion to suppress in the trial court sat as the magistrate who denied the motion brought at the preliminary hearing. At the hearing in the trial court, the judge stated that he was confused by defense counsel's request for clarification regarding "overhead lights" after he had issued his initial ruling, and he "misspoke." He clarified that he did not mean he believed that the officers had activated their overhead lights. This clarification is consistent with his denial of the initial motion to suppress.

The critical issue is whether the magistrate was correct in denying appellant's motion to suppress. The magistrate's factual determination that the police officers did not use their overhead lights was supported by substantial evidence. Having heard two witnesses recite conflicting versions of the same incident, the magistrate concluded the police officer was credible and appellant was not. Appellant cites no authority for the proposition that we should ignore the trial court's clarification of his own misspoken comments issued after the ruling, and we will not do so.

The cases cited by the People are helpful. In *People v. Perez* (1989) 211 Cal.App.3d 1492 (*Perez*), a police officer parked his patrol vehicle in front of a car occupied by two people. The officer left plenty of room for the car to leave. He shone his high beams and spotlights, but not his emergency lights, "in order to get a better look at the occupants and gauge their reactions." (*Perez, supra*, 211 Cal.App.3d at p. 1494.) The car's occupants were "slouched over in the front seat" but did not otherwise respond

7

to the lights.  (*Ibid.*)  The officer walked to the car, tapped on the driver's side window with a lit flashlight, and asked the defendant to roll down his window.  The appellate court found that "the conduct of the officer here did not manifest police authority to the degree leading a reasonable person to conclude he was not free to leave.  While the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny, such directed scrutiny does not amount to a detention."  (*Perez, supra,* at p. 1496.)

In *People v. Franklin* (1987) 192 Cal.App.3d 935 (*Franklin*), a police officer spotted the defendant, Franklin, walking down the street in an area where vandalism, robbery and narcotics trafficking was prevalent at midnight, wearing a coat that seemed too warm for the weather conditions.  When the officer put his patrol car's spotlight on Franklin, Franklin tried to hide a white bundle he was carrying.  The officer stopped his car directly behind Franklin and began to use his radio, and Franklin approached the car.  The officer got out and met him in the area of the headlights.  Without the officer's initiating any conversation, Franklin repeatedly asked, "'What's going on?'"  (*Franklin, supra,* 192 Cal.App.3d at p. 938.)  Rejecting Franklin's claim that he had been detained as a result of these actions, the appellate court observed that "the officer did not block appellant's way; he directed no verbal requests or commands to appellant.  Further, the officer did not alight immediately from his car and pursue appellant.  Coupling the spotlight with the officer's parking the patrol car, appellant rightly might feel himself the object of official scrutiny.  However, such directed scrutiny does not amount to a detention."  (*Franklin, supra,* at p. 940.)

The actions of the police officers in this case were even less aggressive than those of the officers in *Perez* and *Franklin*.  The trial court's factual finding was that officers Horii and Ferrier did not illuminate appellant with their spotlight or their overhead red and blue lights.  They did not "block his way" or make any "verbal requests or commands."  (*Franklin, supra,* 192 Cal.App.3d at p. 940.)  Therefore, there was no

8

detention before appellant threw away the drugs and the motion to suppress was properly denied.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

CHAVEZ

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.