Filed 5/16/19; Certified for Publication 6/10/19 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E070996 |
| v. | (Super.Ct.No. BAF1700516) |
| MARTELL SHIMON KIDD, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Randall D. White (retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), Mark E. Johnson, and Jorge C. Hernandez, Judges.  Affirmed.

Michael A. Hestrin, Riverside County District Attorney, and Alan D. Tate, Deputy District Attorney, for Plaintiff and Appellant.

Steven L. Harmon, Riverside County Public Defender, and Laura Arnold and William A. Meronek, Deputy Public Defenders, under appointment by the Court of Appeal, for Defendant and Respondent.

After being charged with several felony offenses, defendant and respondent Martell Shimon Kidd was twice unsuccessful in having the evidence against him suppressed on motions brought pursuant to Penal Code[1] section 1538.5, first at the preliminary hearing and then after his arraignment on the information. He raised the suppression issue again, however, in a motion to set aside the information pursuant to section 995, which was heard by a different superior court judge. This time, Kidd was successful; the section 995 motion was granted on the ground that the evidence against him should be suppressed as the product of a constitutionally unreasonable search and seizure, resulting in the dismissal of all charges.

In this appeal, the People argue that Kidd's section 995 motion was an inappropriate request to relitigate a matter that had previously been considered and decided by a different superior court judge, and that it should have been denied on that basis. We reject this argument, finding that the suppression issue was properly raised again in Kidd's section 995 motion. In the alternative, the People contend the motion should have been denied on its merits. We disagree, and affirm the trial court's ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At Kidd's preliminary hearing, the prosecution presented evidence that in the wee hours of the morning on April 21, 2017, a law enforcement officer on patrol in the City of San Jacinto in a marked vehicle observed a car parked on a residential street with its front amber fog lights on. The officer could see two individuals sitting in the car. The officer

---

[1] Further undesignated statutory references are to the Penal Code.

2

decided to make contact with the individuals, explaining his reasoning as follows: "[T]here's a couple people inside of this car parked on the road at 1:30 in the morning. Maybe I should check to see if they're stranded, or what exactly they're doing. If—you know, who they are, if they live here."

The officer passed the car, made a U-turn, and parked about 10 feet behind the car, which had another car parked about 10 feet in front of it. The officer pointed two spotlights—one by his driver's side mirror, the other on the overhead light bar—at the occupied car, and then exited his patrol vehicle.

As the officer approached the driver's side of the car, he smelled a strong marijuana odor, apparently coming from the car. When the officer reached the driver's window, he shined his flashlight in the car and asked the occupants what they were doing. Kidd was in the driver's seat. The officer observed that the passenger was attempting to conceal some bags of what he suspected to be marijuana. The officer asked if either of the men were on probation or parole, and Kidd said that he was on probation.

The officer directed the two occupants to exit the car and to sit in his patrol vehicle while he verified Kidd's probation terms. While the officer did so, Kidd spontaneously told the officer that there was a firearm inside the car's center console.

The officer confirmed that Kidd was on probation and that he was subject to a search condition. The officer then searched the car and discovered marijuana, later determined to total 26 ounces, in several different packages; a digital scale; a pistol with the serial number scratched off; a loaded magazine for the pistol; and 142 pills later identified as Alprazolam. The officer arrested Kidd and impounded the evidence.

3

Kidd was arraigned on a felony complaint charging him with several felony offenses based on the evidence recovered from the search, as well as several recidivism-based allegations.  He filed a motion to suppress the evidence pursuant to section 1538.5, which was heard at the preliminary hearing.  The magistrate (Judge Randall D. White) denied the motion to suppress and held Kidd to answer on two felony counts and one misdemeanor.  The magistrate made no express findings of fact in connection with the denial of the motion to suppress.

After Kidd was arraigned on an information filed after the preliminary hearing, he filed another motion to suppress, as authorized by section 1538.5, subdivision (i).  At the special hearing on the motion, neither party presented any additional evidence.  The trial court (Judge Mark E. Johnson) denied the motion.

Subsequently, Kidd brought a motion to dismiss pursuant to section 995, again arguing that the evidence against him should be suppressed.  The trial court (Judge Jorje C. Hernandez) noted that it had reviewed the preliminary hearing transcript, as well as the parties' briefing.  After hearing argument from the parties, the trial court granted the motion.  The People appealed, as authorized by section 1238, subdivision (a)(1).

## II.  DISCUSSION

A.  *Standard of Review*

"'In a proceeding under section 995, the superior court's role is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment.'" (*People v. Magee* (2011) 194 Cal.App.4th 178, 182 (*Magee*), quoting *People v. McDonald* (2006) 137 Cal.App.4th 521, 529.)  Thus, the superior court "'merely reviews

4

the evidence; it does not substitute its judgment on the weight of the evidence nor does it resolve factual conflicts.'" (*Magee*, *supra*, at p. 182.) In our review, "we, in effect, review the magistrate's decision directly, deferring to the magistrate's factual findings." (*People v. Hawkins* (2012) 211 Cal.App.4th 194, 200; accord *Magee*, *supra*, at pp. 182-183 ["this court 'must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence.'"].) We exercise our independent judgment in determining whether the search or seizure was reasonable on the facts found by the magistrate. (*Magee*, *supra*, at p. 183.)

B. *Analysis*

The People argue that "since [Kidd] had already availed himself of a motion to suppress during the preliminary hearing and reconsideration of that motion to suppress under . . . section 1538.5, subdivision (i), he had no right to re-raise the constitutionality of his detention in a motion to set aside the information under Penal Code section 995." We disagree.

Prior to 1967, when the Legislature enacted section 1538.5, a defendant had two methods of challenging before trial the admissibility of evidence obtained by a warrantless search and seizure: (1) a nonstatutory motion to suppress; and (2) a statutory motion pursuant to section 995 to set aside the accusatory pleading. (*People v. Laiwa* (1983) 34 Cal.3d 711, 717 (*Laiwa*), superseded by statute on other grounds as stated in *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223.) "[W]hen the Legislature codified, expanded, and regulated the motion to suppress evidence on the ground of unreasonable

5

search and seizure in the elaborate provisions of section 1538.5, it left intact the motion to set aside the accusatory pleading on the same ground under section 995." (*Laiwa, supra*, at p. 717.) The Legislature's intent in this regard was unambiguously expressed in the statutory language of section 1538.5, which provides that "[n]othing in this section shall be construed as altering . . . the procedure and law relating to a motion made pursuant to Section . . . 995" (§ 1538, subd. (n)), and which includes section 995 in a list of "the sole and exclusive remedies prior to conviction to test the unreasonableness of a search or seizure" (§ 1538, subd. (m)). A defendant seeking to avoid the use of evidence obtained by an unreasonable search and seizure may therefore "move to set aside an indictment or information under section 995 . . . or he may move to suppress the evidence by a motion under section 1538.5 . . . [o]r he may, as here, use both methods of attack." (*Smith v. Superior Court* (1978) 76 Cal.App.3d 731, 733; accord *Magee, supra*, 194 Cal.App.4th at p. 182 ["'If the defendant is unsuccessful [on a section 1538.5 motion] at the preliminary hearing, he or she may raise the search and seizure matter before the superior court under the standards governing a section 995 motion.'"]; *People v. Gephart* (1979) 93 Cal.App.3d 989, 996-997 ["Under the statutory scheme of . . . sections 995, 999a, and 1538.5, an accused may have up to seven opportunities to challenge the validity of a temporary detention, arrest, or search and seizure," including a motion to suppress the evidence at the preliminary hearing pursuant to section 1538.5, subd. (f), a motion to set aside the information pursuant to section 995, and a special hearing pursuant to section 1538.5, subd. (i)].)

The People's reliance on *People v. Superior Court (Scofield)* (1967) 249 Cal.App.2d 727 (*Scofield*) in support of a contrary conclusion is misplaced. In that case, arising from facts that predate the adoption of section 1538.5, the defendant brought a nonstatutory motion seeking to have search warrants quashed and seized property returned in the municipal court, which was denied. (*Scofield, supra,* at p. 729.) The defendant sought review of that ruling by means of a petition for writ of mandate to the superior court, which was considered by Judge Wapner, who issued written findings of fact and conclusions of law along with a judgment denying the petition. (*Id.* at p. 731 & fn.1.) The defendant unsuccessfully challenged the superior court's judgment by seeking writ relief in the Court of Appeal, and his petition for review by the Supreme Court was denied. (*Id.* at p. 731.) Subsequently, the defendant filed a motion to suppress the evidence and dismiss the indictment in the superior court, again challenging the validity of the search warrant, which was treated as part of proceedings under section 995. (*Scofield, supra,* at pp. 732-733.) A different superior court judge, Judge Lawler, granted the defendant's motion. (*Id.* at p. 732.) On appeal from the grant of the section 995 motion, the Court of Appeal found that under the doctrine of res judicata Judge Wapner's decision to deny the defendant's petition for writ of mandate and thereby uphold the search warrants was binding on Judge Lawler, so Judge Lawler erred by granting the section 995 motion on the ground that the search warrants were invalid. (*Scofield, supra,* at pp. 732, 735.)

*Scofield* is distinguishable from this case. Judge Wapner's ruling denying Scofield's petition for writ of mandate is analogous in some respects to Judge Johnson's

7

ruling denying Kidd's renewed motion to suppress pursuant to section 1538.5, subdivision (i). But Judge Wapner's ruling led to a final judgment in a collateral writ proceeding. (*Scofield, supra*, 249 Cal.App.2d at pp. 731-732.) In contrast, here, Judge Johnson's ruling on Kidd's section 1538.5 motion did not result in any final judgment. Rather, it was a pretrial ruling on the admissibility of evidence that is best viewed as an "intermediate, interlocutory ruling[] subject to revision even after the commencement of trial." (*People v. Riva* (2003) 112 Cal.App.4th 981, 992 (*Riva*).) The doctrine of res judicata is therefore inapplicable here. (See generally *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-825 [discussing requirements for claim preclusion and issue preclusion, which include a final judgment on the merits].)

The People also focus on statutory language limiting pretrial review after a special hearing pursuant to section 1538.5, subdivision (i): "After the special hearing is held, any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his or her motion at the special hearing." On its face, however, this language only prohibits the defendant from making a second motion pursuant to section 1538.5, subdivision (i), and sets a time limit on pretrial writ review of the trial court's ruling on the one permissible motion pursuant to that subdivision. Nothing in the statutory language expressly prohibits raising the same substantive issues through a different procedural mechanism. And, as noted, when the Legislature adopted section 1538.5, it chose to leave intact the law and procedures relating to section 995 motions, including by providing the opportunity to raise again issues relating to suppression of evidence. (§ 1538.5, subd. (n);

8

*Laiwa*, *supra*, 34 Cal. 3d at p. 717.)  While appellate courts have occasionally decried the "overlapping statutory procedures for pretrial challenge of a search and seizure" as "unsatisfactory" in some respects, reform of those procedures is primarily a matter for the Legislature.  (*Laiwa*, *supra*, at p. 722.)

The People cite *Riva*, *supra*, 112 Cal.App.4th at p. 991, for the proposition that "one trial judge cannot reconsider and overrule an order of another trial judge."  This line of argument fails for two reasons.  First, when Judge Hernandez ruled on Kidd's section 995 motion, he did not, strictly speaking, reconsider and overrule Judge Johnson's order denying Kidd's motion pursuant to section 1538.6, subdivision (i).  Under section 995, Judge Hernandez reviewed the magistrate's ruling at the preliminary hearing, not Judge Johnson's ruling after the special hearing pursuant to section 1538.5, subdivision (i).[2] (See *Magee, supra*, 194 Cal.App.4th at p. 182.)  Judge Johnson and Judge Hernandez reached different conclusions in their review of the evidence presented at the preliminary hearing and the magistrate's implicit findings of fact based on that evidence.  But they did so in parallel, as they each presided over separate statutory procedures, not by one superior court judge overruling the other.[3]

---

[2]  Although Judge White was a judge of the Riverside Superior Court (now retired), he was sitting as a magistrate when he presided over Kidd's preliminary hearing. (See *People v. Richardson* (2007) 156 Cal.App.4th 574, 584 ["It has long been understood that '[m]agistrates presiding at preliminary hearings do not sit as judges of courts, and exercise none of the powers of judges in court proceedings."].)

[3]  It is worth noting that there is not necessarily complete overlap between a motion pursuant to section 1538.5, subdivision (i) and a motion pursuant to section 995 premised on the argument that the evidence against the defendant should be suppressed.

*[footnote continued on next page]*

9

Second, as *Riva* notes, the "general rule" is that "one trial judge cannot reconsider and overrule an order of another trial judge," but "as with all general rules, there are exceptions . . . ." (*Riva*, *supra*, 112 Cal.App.4th at p. 991.) In adopting section 1538.5, the Legislature provided multiple procedural vehicles for both the defendant and the prosecution to litigate and relitigate search and seizure issues before trial. (*Laiwa*, *supra*, 34 Cal. 3d at p. 717; *People v. Gephart, supra*, 93 Cal.App.3d at pp. 996-997.) It did not provide any express limitation of the sort that the People propose, based on whether the same judge or a different one is presiding over the various available statutory procedures.

We conclude that there was no procedural bar to Judge Hernandez accepting the arguments regarding suppression raised by Kidd in his section 995 motion, regardless of Judge Johnson's rejection of those same arguments in Kidd's earlier motion pursuant to section 1538.5, subdivision (i). We turn, then, to our review of the merits.

The People take the position that Kidd was not detained until after the officer spoke to him and learned that he was on probation. They argue that, prior to the officer

---

A section 995 motion may be granted on this basis only if the suppression of the evidence leaves no evidence sufficient to constitute "reasonable or probable cause" in support of the charges. (§ 995, subds. (a)(1)(B), (2)(B).) A section 1538.5, subdivision (i), motion may seek suppression of any evidence the defendant contends was the product of an invalid search or seizure, without regard to whether other, unchallenged evidence might constitute reasonable or probable cause in support of the charges. (§ 1538.5, subd. (i).) Also, on a section 995 motion, the court "merely reviews the evidence"; it may not take new evidence. (*Magee*, *supra*, 194 Cal.App.4th at p. 182.) In a special hearing pursuant to section 1538.5, subdivision (i), the trial court considers not only "the transcript of the preliminary hearing" but also, if presented by the parties, "evidence that could not reasonably have been presented at the preliminary hearing, except that the people may recall witnesses who testified at the preliminary hearing," plus any evidence that all parties agree may be presented. (§ 1538.5, subd. (i).)

observing the passenger trying to hide bags of marijuana, his approach and engagement with the occupants of the car is best viewed as a consensual encounter, not requiring any legal justification. We disagree.

"'It is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so' without having any 'articulable suspicion of criminal activity.'" (*People v. Parrott* (2017) 10 Cal.App.5th 485, 492, quoting *People v. Rivera* (2007) 41 Cal.4th 304, 309.) "As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) "In determining whether a reasonable person would have believed he or she was free to leave or end the encounter, a court must take into account the totality of the circumstances from the perspective of a reasonable person in the defendant's position." (*People v. Parrott*, *supra*, at p. 493.)

Previous case law provides some starting points for this fact-intensive analysis, though we have not discovered any case on indistinguishable facts. Without more, a law enforcement officer simply parking behind a defendant would not reasonably be construed as a detention. (*People v. Franklin* (1987) 192 Cal.App.3d 935, 940 [so stating]; cf. *People v. Wilkins* (1986) 186 Cal.App.3d 804, 809 [occupants of parked car detained when officer "stopped his marked patrol vehicle . . . in such a way that the exit of the parked vehicle was prevented"].) In contrast, when a law enforcement officer pulls in behind a car (whether parked or not) and turns on colored emergency lights, no reasonable occupant of the car believes that he or she is free to leave. (See *People v.*

11

*Bailey* (1985) 176 Cal.App.3d 402, 406.) Without more, a law enforcement officer shining a spotlight on a person does not constitute a detention. (See *People v. Rico* (1979) 97 Cal.App.3d 124, 128-130 [no detention where officer momentarily spotlighted a car as both were travelling on freeway, and then followed car for five minutes]; *Franklin, supra*, at p. 940 [no detention where officer parks near and shines spotlight on pedestrian, but does not exit patrol vehicle or issue any verbal requests or commands].) But where an officer parked his patrol vehicle about 35 feet away from a pedestrian, and after five to eight seconds of observation "bathed [him] in light, exited his police vehicle, and, armed and in uniform, 'briskly' walked 35 feet in 'two and a half, three seconds' directly to him while questioning him about his legal status," the officer's "show of authority" was so intimidating as to communicate to any reasonable person that he or she was ""'not free to decline [his] requests or otherwise terminate the encounter.'"" (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1111-1112.)

Taking into account the totality of the circumstances, we find that Kidd was detained when the officer made a U-turn to pull in behind him and trained spotlights on his car. The officer did not block Kidd's car in, and he did not illuminate his colored emergency lights, so as to unambiguously signal a detention. Nevertheless, motorists are trained to yield immediately when a law enforcement vehicle pulls in behind them and turns on its lights. Regardless of the color of the lights the officer turned on, a reasonable person in Kidd's circumstances "would expect that if he drove off, the officer would respond by following with red light on and siren sounding . . . ." (*People v. Bailey, supra*, 176 Cal.App.3d at p. 406.) Moreover, any ambiguity was removed when the

12

officer more or less immediately exited his patrol vehicle and began to approach Kidd's car. Although the officer's approach was, according to record, not made in a particularly aggressive or intimidating manner, a reasonable person in Kidd's circumstances would not have felt free to leave.

Having determined that Kidd was detained as soon as the officer pulled in behind him and turned his spotlights on him, we must decide whether the detention was legally justified. To be considered reasonable under the Fourth Amendment, a detention requires an "articulable suspicion that the person has committed or is about to commit a crime." (*In re Manuel G, supra*, 16 Cal.4th at p. 821.) We consider whether a search or seizure was reasonable under an objective standard, based on the facts and circumstances known to the officer but without regard to the officer's subjective state of mind. (*Scott v. United States* (1978) 436 U.S. 128, 138; see also *People v. Souza* (1994) 9 Cal.4th 224, 230-231 [an investigative detention is legally justified "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity"].)

We find that Kidd's detention was not legally justified. The officer's attention was drawn to Kidd's vehicle by the circumstance that the fog lights were illuminated, but the normal headlamps were not. Vehicle Code section 24403 provides that a motor vehicle "may be equipped with not more than two foglamps that may be used with, but may not be used in substitution of, headlamps." It is not, however, a violation to use only

foglamps while parked.  (See Veh. Code, § 24400, subd. (b) [requiring lighted headlamps while a vehicle is "operated during darkness, or inclement weather, or both"].)

The People argue that the officer had a reasonable suspicion that Kidd was *about* to drive with foglamps only in violation of Vehicle Code section 24403, and that a reasonable suspicion a crime is about to occur is sufficient to justify Kidd's detention. We reject this argument.  It is possible that an occupied vehicle that is parked with only its foglamps on is about to drive in that condition.  But there are many other possibilities; perhaps the driver is about to turn on the headlamps too before driving; perhaps the driver is about to turn off the foglights and park; perhaps he or she is merely using the foglamps for illumination while parked, with no intention of driving imminently.  "Reasonable suspicion a law has been violated can be based on less than probable cause to believe a violation has occurred but it cannot be based on mere speculation or hunch."  (*People v. Rodriguez* (2006) 143 Cal.App.4th 1137, 1148.)  Given the possibilities for lawful conduct, the fact that a car is simply parked with its fog lights on is not "'reasonably "consistent with criminal activity."'"  (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)  In our view, the facts known to the officer at the time he detained Kidd do not support a reasonable suspicion that a crime was about to occur, but only speculation.

The People argue that even if Kidd's detention was not legally justified, the evidence recovered should not have been suppressed because the officer did not act in bad faith or commit deliberate, reckless, or grossly negligent misconduct.  (See *Herring v. United States* (2009) 555 U.S. 135, 136, 144 [the exclusionary rule "serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or

14

systematic negligence"]; *People v. Robinson* (2010) 47 Cal.4th 1104, 1126 [following *Herring*].)  In this case, however, by his own admission, the officer pulled in behind Kidd's car and spotlighted it without any observation of possible wrongdoing, but rather just to check to see what the car's occupants were doing, and to check if they lived in the neighborhood.  Police seizures made in the absence of any suspicion of wrongdoing, and apparently just "in the hope that something might turn up," directly implicate the central rationale underlying the exclusionary rule, deterrence of police misconduct.  (*Brown v. Illinois* (1975) 422 U.S. 590, 605)  We do not suggest the officer here acted in bad faith, but we find his detention of Kidd in the absence of any reasonable suspicion of wrongdoing to be deliberate, in the sense that it was not accidental or negligent conduct.  (See *People v. Macabeo* (2016) 1 Cal.5th 1206, 1225-1226 [excluding evidence resulting from search that was "deliberate," rather than "the result of negligence" or from mistake in applying confusing and complex new law].)  The trial court's suppression of the evidence in this case serves the policy objectives of the exclusionary rule as articulated in *Robinson* and *Herring*.

In some circumstances, courts have found the connection between an unlawful traffic stop and the discovery of incriminating evidence to be attenuated by the subsequent discovery that the defendant is subject to a parole search condition.  (See *People v. Durant* (2012) 205 Cal.App.4th 57, 64-66 [finding taint of illegal detention attenuated; officer had pulled over defendant based on perceived traffic violation].)  But the People have not argued here that we should consider whether any illegality in the officer's initial detention of Kidd was attenuated by Kidd's parole search condition, so

15

we need not discuss the issue at length.  If the People had raised the issue, we would not have found Kidd's parole search condition served to attenuate the taint of the illegal detention.  (See *People v. Bates* (2013) 222 Cal.App.4th 60, 70-71 [no attenuation; officer had stopped car without any observation of possible wrongdoing].)

## III.  DISPOSITION

The trial court's order suppressing the evidence against Kidd and setting aside the information pursuant to section 995 is affirmed.

RAPHAEL
J.

We concur:

SLOUGH
Acting P. J.

FIELDS
J.

16

Filed 6/10/19

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E070996 |
| v. | (Super.Ct.No. BAF1700516) |
| MARTELL SHIMON KIDD, | ORDER CERTIFIYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

Request has been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion filed in the above-entitled matter on May 16, 2019, and it appears that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c).

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter on May 16, 2019, is certified for publication.

CERTIFIED FOR PUBLICATION

RAPHAEL
J.

We concur:

SLOUGH
Acting P. J.

FIELDS
J.