Filed 7/22/20; Certified for publication 8/7/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C087681 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CR-FER-2018-0003729) |
| v. | |
| LEON WILLIAM TACARDON, | |
| Defendant and Respondent. | |

Defendant Leon William Tacardon was charged with possession of a controlled substance for sale (Health & Saf. Code, § 11351) and misdemeanor possession of marijuana for sale (Health & Saf. Code, § 11359). Evidence of these crimes was seized following an interaction with San Joaquin County Sheriff's Deputy Joel Grubb, the details of which will be set forth momentarily. After an unsuccessful motion to suppress

1

the evidence made during the preliminary hearing pursuant to Penal Code[1] section 1538.5, defendant renewed the motion in the superior court under section 995 and prevailed. The People appeal. We reverse.

BACKGROUND

The facts are taken from the evidence presented at the hearing on defendant's motion to suppress.

Deputy Grubb testified that at 8:45 p.m. on March 20, 2018, he was in uniform and driving a marked patrol car, with its high beams on, on Fairway Drive in Stockton.[2] The deputy saw a gray BMW legally parked between two houses with its engine and headlights off. Three people were in the BMW, two of whom were reclining in the front seats wearing hooded sweatshirts. Smoke was coming out of the car windows that were slightly cracked open.

Deputy Grubb made a U-turn, pulled up 15 to 20 feet behind the BMW, and parked, intending to contact the persons inside. He did not activate his siren or emergency lights, but turned on his spotlight to illuminate the car's interior. He got out and began to approach the car; his weapon was not drawn.

As Deputy Grubb approached the BMW, the passenger who had been in the rear seat, M.K., jumped out and closed the door behind her, moving very quickly and "kind of abrupt[ly]." Her conduct struck the deputy as "unusual" and caused him to be concerned for his safety, although he did not see anything in her hands or any bulge in her clothing, and she did not make any movements that appeared threatening.

---

[1] Undesignated statutory references are to the Penal Code.

[2] According to Deputy Grubb, the search took place in "west Stockton," a high-crime, high-drug area. However, the immediate neighborhood was known as Riviera Cliffs and was adjacent to "the Country Club area." The deputy did not know how many drug arrests had recently been made in Riviera Cliffs or how the drug arrest rate there compared to that in other parts of west Stockton.

When M.K. got to the rear of the BMW, Deputy Grubb asked her what she was doing. She replied: "I live here." The deputy asked her to stay outside the car and near the sidewalk behind it, where he could observe her and react in time in case she were armed or began to act irrationally. He did not draw his gun or Taser and spoke in a "moderate" and "fairly calm" voice. She complied with his orders.

Deputy Grubb did not smell marijuana before M.K. got out of the BMW, as he was not close enough to the car yet. However, he smelled the substance at about the time she got out and he made contact with her.[3] At that point, the deputy did not consider any of the car's occupants free to leave. The deputy then approached the BMW, using his flashlight to illuminate the interior because the rear windows were tinted. On the rear passenger floorboard, he saw three large clear plastic bags, the largest at least eight inches across and "kind of tied off," containing a green leafy substance. He also saw a custom-rolled dark brown and green cigarette in the center console, containing a burnt green leafy substance; he did not believe it was lit.

Deputy Grubb contacted the two men in the front seat and asked for their identification. Defendant, who was in the driver's seat, did not produce identification but gave his name and said he was on probation. The front seat passenger produced identification that the deputy took and retained while speaking to the men. The deputy told defendant to stay in the car.

Deputy Grubb returned to his patrol car and conducted a records check that confirmed the identifications of the BMW's occupants and showed defendant was on searchable probation. The deputy secured defendant in the back of the patrol car.

Along with other deputies, Deputy Grubb conducted a probation search of the BMW. The search uncovered, in addition to the plastic bags, an unlabeled prescription

---

[3]     The deputy stated that detaining M.K. and smelling the marijuana happened "all kind of simultaneously."

3

vial containing 76 suspected hydrocodone pills in a storage area near the passenger-side rear door.  Defendant was arrested, and $1,904 was found on his person.

Laboratory analysis showed the plastic bags contained 696.3 grams of marijuana and the pills were hydrocodone.  An expert opined both substances were possessed for purposes of sale.

### *The Magistrate's Ruling*

After hearing argument on the suppression motion, the magistrate ruled:

"Deputy Grubb said that he was on Fairway Drive, which is in Riviera Cliffs, which I always thought was one of the wealthier areas of Stockton, but he said it[] . . . has a high crime rate.  . . . I've been a judge for 34 years.  I don't recall that many cases coming out of Riviera Cliffs.  In any case, he saw a BMW with three people in it at 8:45 p.m., March 20th of 2018.  And two are in the front, one was in the back.  And he saw smoke.  The windows were cracked.  I took that to mean they were open a small amount.  The engine was not running.  The vehicle was not moving.  He . . . was going to contact the people.  So he turned on his spotlight and illuminated the vehicle.  At that point, the female passenger from the back seat exited quickly, jumped out, as he described it.  Then he . . . said that -- and this was subject to quite a few questions -- that I think what happened was as she -- up until then, he didn't smell marijuana.  When she opened the door, he told her to stop.  At that point, he did not smell the marijuana.  But then more or less -- well, a little bit after she opened the door, a little bit after he told her to stop, he smelled the marijuana.  And he told her . . . to stay in his vision for safety.  So then . . . he used . . . his flashlight.  And he turned the flashlight -- he had the flashlight on.  And he can see large clear plastic bags with green leafy substance, approximately eight inches in diameter, in plain sight in the vehicle.  This was as a result of looking through the windows with a flashlight.  That . . . is not considered a search.  He saw a cigarette in the center console that was rolled.  It was dark, a burned substance, but it was a green leafy substance.  I guess it was a combination of both.  As it turned out, the

4

substance was marijuana, . . . 696.3 grams. So there were three baggies. So I would say this is approximately half a pound per bag. And after all this happened -- and this all happened pretty quickly. Once he flashed his light on the vehicle and observed the material, he then asked for ID from the defendant. The defendant didn't have it. Then he obtained the name and date of birth from the defendant. And he subsequently recovered the marijuana. He . . . also discovered a vial of 76 pills in the passenger door, which were determined to be [O]xycodone. So then he arrested the defendant.

"[I]t's not against the law to possess an ounce, but if it's more than an ounce, then it's against the law. In other words, possession for sale of marijuana is still a felony.[4] So I think the officer had probable cause to believe that . . . this was more than an ounce that he saw in plain sight. I think it was a police contact. . . . [I]n other words, he didn't stop the defendant. There certainly was a point at which the defendant wasn't free to go, but that still would not preclude it being characterized as a contact. And so the question is were his Fourth Amendment rights violated. And I'm going to say even with the new law about marijuana, . . . they were not violated. . . . [B]ecause all this happened so quickly, . . . and the vehicle was stopped already, I don't think his Fourth Amendment rights were violated. I think it was a valid search. In other words, after the officer saw this, he was entitled to seize it. And the search of the . . . passenger side door would be a search incident to a lawful arrest.

"So here we had ample amount of marijuana and -- now, as far as the [O]xycodone, was that possessed for sale? Well, it might be possessed for personal use. Very possibly. But the issue for a preliminary examination is is there reasonable and

---

**4**    After defense counsel questioned this finding, the magistrate determined that under current law that was already in effect at the time of the search, possession of marijuana for sale is a misdemeanor. The magistrate then held defendant to answer on count 2 as a misdemeanor.

probable cause to believe that a felony was committed. And I think there's certainly enough evidence to say . . . it certainly could be possessed for sale. Also we have a $1,904 in cash. There could be an innocent reason for the defendant to possess $1,900. Maybe he was going to pay his rent with it, but maybe he wasn't. But in any case, I think there's enough for a preliminary examination. So the 1538.5 is denied."

### *Ruling on the Section 995 Motion*

As mentioned, defendant's section 995 motion renewed his challenge to the search and seizure. After hearing argument on the motion, the superior court ruled:

"[T]he test for a temporary detention is an officer may temporarily detain a person suspected of criminal activity for only so long a period of time as is reasonably necessary to confirm or dispel such suspicions. At the point in time the officer pulled in behind the vehicle, it was . . . a consensual contact. He didn't have his red lights on, he didn't order anyone to do anything.

"When the female got out of the car and he said it was for officer's safety and ordered her to stop, he detained her. That's . . . a detention. And he also said in his testimony the other individuals were detained in the car. . And even though . . . it doesn't matter what he thought -- but to give it any commonsense logic, if he's thinking they're detained, wouldn't a reasonable person think they were detained? And the test for the temporary detention is is the officer able to articulate particular facts that support a reasonable suspicion that the person is involved in criminal activity? . . . [T]his may be the highest crime-rate area ever. There may have been a million reasons justifiable as to why he detained the people in the car prior to smelling the marijuana. But the problem was, he couldn't articulate those things. When you read through the transcripts, when he's asked open-ended why he's doing this, he doesn't testify to any of that.

"So I'm gonna grant the defendant's motion. The evidence is suppressed and the case is dismissed."

This appeal followed.

6

DISCUSSION

# I

## *Standard of Review*

"A criminal defendant is permitted to challenge the reasonableness of a search or seizure by making a motion to suppress at the preliminary hearing. [Citation.] If the defendant is unsuccessful at the preliminary hearing, he or she may raise the search and seizure matter before the superior court under the standards governing a section 995 motion. [Citations.]" (*People v. McDonald* (2006) 137 Cal.App.4th 521, 528-529.) In ruling on a suppression issue as part of a section 995 motion, "the superior court's role is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment. [Citation.] The superior court merely reviews the evidence; it does not substitute its judgment on the weight of the evidence nor does it resolve factual conflicts. [Citation.]" (*McDonald,* at p. 529.)

On appeal from a superior court's grant of a section 995 motion based on the conclusion a search or seizure was unreasonable, we " 'must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence. [Citations.]' [Citation.] 'We judge the legality of the search by "measur[ing] the facts, as found by the [magistrate], against the constitutional standard of reasonableness." [Citation.] Thus, in determining whether the search or seizure was reasonable on the facts found by the magistrate, we exercise our independent judgment. [Citation.]' [Citation.]" (*People v. Magee* (2011) 194 Cal.App.4th 178, 182-183.)

# II

## *The Challenged Detention Was Reasonable*

The Attorney General argues the superior court erred in concluding defendant was detained when Deputy Grubb ordered M.K. to stay outside the car and near the sidewalk behind it. According to the Attorney General, regardless of whether M.K. was detained

7

at that point, defendant was not detained until after Deputy Grubb smelled marijuana and saw three large bags of the substance on the rear floorboard of the BMW, at which point, "the deputy had reasonable suspicion that criminal activity was afoot." In response, defendant argues the superior court correctly determined a reasonable person in defendant's position would not have felt free to leave when the deputy prevented M.K. from going into her house and ordered her to remain by the BMW.

After the initial briefing was submitted, our colleagues at the Fourth Appellate District decided *People v. Kidd* (2019) 36 Cal.App.5th 12 (*Kidd*), holding the defendant in that case, who was also in a parked car at night, "was detained when the officer made a U-turn to pull in behind him and trained spotlights on his car." (*Id*. at p. 21.) We granted the Attorney General's request to file supplemental briefing addressing the new case. Having reviewed the supplemental briefing filed by the Attorney General and defendant, we agree with the Attorney General's assessment of when the detention occurred and conclude it was supported by reasonable suspicion.[5]

"[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." (*Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16 [20 L.Ed.2d 889].) Our Supreme Court has explained: "As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. . . . '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances

---

[5] This conclusion makes it unnecessary to address the Attorney General's alternative argument that discovery of defendant's probation search condition was an intervening independent circumstance justifying the search and attenuating any taint from an initial unreasonable detention.

8

surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.] The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

It is settled that the driver and occupants of a vehicle are detained when a police officer blocks the vehicle's only means of departure with the officer's patrol car. (*People v. Wilkins* (1986) 186 Cal.App.3d 804, 809 [detention occurred when officer in marked patrol car parked diagonally behind defendant's vehicle so it could not exit parking lot].) However, "[w]ithout more, a law enforcement officer simply parking behind a defendant would not reasonably be construed as a detention." (*Kidd*, *supra*, 36 Cal.App.5th at p. 21, citing *People v. Franklin* (1987) 192 Cal.App.3d 935, 940.) It is also settled that the use of emergency lights is a sufficient show of authority to communicate to a reasonable person that he or she is not free to leave. (*People v. Bailey* (1985) 176 Cal.App.3d 402, 405-406 ["reasonable person to whom the red light from a vehicle is directed would be expected to recognize the signal to stop or otherwise be available to the officer"].) However, "[w]ithout more, a law enforcement officer shining a spotlight on a person does not constitute a detention." (*Kidd*, *supra*, 36 Cal.App.5th at p. 21, citing *People v. Rico* (1979) 97 Cal.App.3d 124, 128-129; *People v. Franklin*, *supra*, 192 Cal.App.3d at p. 940.)

For example, in *People v. Perez* (1989) 211 Cal.App.3d 1492 (*Perez*), a police officer parked his patrol car in front of Perez's vehicle, leaving "plenty of room" for Perez to drive away, and activated both spotlights on the patrol car "to get a better look at the occupants and gauge their reactions." (*Id*. at p. 1494.)  The officer then walked over to the car, tapped on the window, and asked the driver to roll down the window.  (*Ibid*.) The appellate court concluded: "[T]he conduct of the officer here did not manifest police authority to the degree leading a reasonable person to conclude he was not free to leave. While the use of high beams and spotlights might cause a reasonable person to feel himself [or herself] the object of official scrutiny, such directed scrutiny does not amount to a detention.  [Citations.]" (*Id*. at p. 1496.)

In contrast, *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry*) involved more than the use of a spotlight to illuminate the person under scrutiny.  As the appellate court explained, the following circumstances amounted to a sufficient show of authority to communicate to a reasonable person in the defendant's position that he was not free to leave: "[A]fter only five to eight seconds of observing defendant[, a pedestrian,] from his marked police vehicle, [the officer] bathed defendant in light, exited his police vehicle, and, armed and in uniform, 'briskly' walked 35 feet in 'two and a half, three seconds' directly to him while questioning him about his legal status.  Furthermore, [the officer] immediately questioned defendant about his probation and parole status, disregarding defendant's indication that he was merely standing outside his home.  In other words, rather than engage in a conversation, [the officer] immediately and pointedly inquired about defendant's legal status as he quickly approached." (*Id*. at pp. 1111-1112, fn. omitted.)

Here, as in *Perez*, there is no evidence in the record indicating that the BMW was blocked in by Deputy Grubb's patrol car.  Nor does the fact that the deputy pulled up behind the BMW, activated the patrol car's spotlight, and approached the vehicle on foot, manifest a sufficient show of police authority to constitute a detention.  Unlike *Garry*, the

10

deputy did not quickly close the gap between himself and defendant or immediately and aggressively question him rather than engage in conversation. Nor does defendant argue, either in his initial briefing or in his supplemental brief, that a detention occurred when the deputy illuminated the BMW with the spotlight and began to approach on foot. We nevertheless pause the sequence of events here because *Kidd*, *supra*, 36 Cal.App.5th 12, holds to the contrary.

In *Kidd*, a police officer on patrol in a marked police car at night saw a car with two occupants parked on a residential street with its fog lights on. The officer drove past the car, made a U-turn, parked about 10 feet behind the car, and illuminated the car with two spotlights. He then got out of his car and approached the parked car on foot, detecting a strong marijuana odor as he did so. When the officer reached the driver's window, he shined his flashlight in the car and asked the occupants what they were doing. Ultimately determining the driver was subject to searchable probation, the subsequent search of the car uncovered drugs and a firearm. (*Kidd*, *supra*, 36 Cal.App.5th at pp. 15-16.) Relying on *Garry*, the appellate court held these circumstances constituted a detention: "Taking into account the totality of the circumstances, we find that Kidd was detained when the officer made a U-turn to pull in behind him and trained spotlights on his car. The officer did not block Kidd's car in, and he did not illuminate his colored emergency lights, so as to unambiguously signal a detention. Nevertheless, motorists are trained to yield immediately when a law enforcement vehicle pulls in behind them and turns on its lights. Regardless of the color of the lights the officer turned on, a reasonable person in Kidd's circumstances 'would expect that if he [or she] drove off, the officer would respond by following with red light on and siren sounding . . . .' [Citation.] Moreover, any ambiguity was removed when the officer more or less immediately exited his patrol vehicle and began to approach Kidd's car. Although the officer's approach was, according to record, not made in a particularly

aggressive or intimidating manner, a reasonable person in Kidd's circumstances would not have felt free to leave." (*Kidd,* at pp. 21-22.)

We disagree with this analysis for the reasons expressed in *Perez*, a decision the *Kidd* opinion inexplicably ignores. Simply put, although a person whose vehicle is illuminated by police spotlights at night may well feel he or she is "the object of official scrutiny, such directed scrutiny does not amount to a detention." (*Perez*, *supra*, 211 Cal.App.3d at p. 1496.)

Turning to the question of whether Deputy Grubb's interaction with the backseat passenger, M.K., after she got out of the car, in addition to the foregoing events, amounted to a detention, we have no difficulty concluding M.K. was detained at that point. As to her, in addition to the spotlight, the deputy ordered her to remain on the sidewalk near the BMW. (See *People v. Roth* (1990) 219 Cal.App.3d 211, 215 [detention occurred when officer shined spotlight on defendant, stopped the patrol car, got out and commanded defendant to approach].) However, there is no evidence defendant observed the deputy's interaction with M.K., or that the deputy conveyed to defendant that he, like M.K., was required to remain. (See *Florida v. Bostick* (1991) 501 U.S. 429, 434-437 [115 L.Ed.2d 389, 398-400] [no seizure when officers question a person, ask for identification, and request consent for search, so long as officers do not convey message that compliance required].) We conclude the magistrate's implied finding that defendant was not detained at this point is supported by substantial evidence.

Nevertheless, the superior court set this finding aside and found defendant was detained even before the deputy contacted him, apparently because the deputy testified he did not *subjectively* consider the car's occupants free to leave after he had contacted M.K.[6] Because the superior court should not have made new factual findings on a

---

**6** After citing the deputy's testimony, the superior court stated: "[I]t doesn't matter what he thought." However, the court then added that according to "commonsense

12

section 995 motion, and because the deputy's uncommunicated state of mind would not have suggested to a reasonable person in defendant's position that he was not free to leave, we disregard the superior court's finding on this question. (See *People v. Magee*, *supra*, 194 Cal.App.4th at p. 182; *People v. McDonald*, *supra*, 137 Cal.App.4th at p. 529.)

Based on the magistrate's factual findings expressed on the record and supported by substantial evidence, we conclude defendant was detained by Deputy Grubb not when the deputy detained M.K., but when the deputy, after smelling marijuana coming from the BMW and seeing three large bags of the substance on the rear floorboard, told defendant to remain in the car while he conducted a records check. At that point, there can be no doubt the deputy possessed reasonable suspicion defendant was engaged in criminal activity. (See *People v. Fews* (2018) 27 Cal.App.5th 553, 560 [officers smelled and saw marijuana in vehicle, supplying reasonable suspicion the defendant may have been unlawfully transporting the substance].)

We conclude the superior court erred by setting aside the magistrate's ruling denying defendant's motion to suppress evidence. We therefore grant the relief requested by the Attorney General.

---

logic," "if he's thinking they're detained, wouldn't a reasonable person think they were detained?" The answer is no: if an officer has not said or done anything to cause a reasonable person to think he or she is detained, the officer's unspoken thoughts are irrelevant. (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.)

DISPOSITION

The superior court's order is reversed, and the matter is remanded with directions to reinstate the information and the magistrate's order denying defendant's motion to suppress evidence.

/s/
HOCH, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
BUTZ, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

Filed 8/7/20

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----


| THE PEOPLE, | C087681 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CR-FER-2018-0003729) |
| v. | |
| LEON WILLIAM TACARDON, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |


APPEAL from a judgment of the Superior Court of San Joaquin County, Michael J. Mulvihill, Judge.  Reversed with directions.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen, and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Appellant.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Respondent.


THE COURT:


The opinion in the above-entitled matter filed on July 22, 2020, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion

1

should be published in the Official Reports and it is so ordered.

FOR THE COURT:


  /s/
ROBIE, Acting P. J.



  /s/
HOCH, J.



  /s/
BUTZ, J.*

---

\* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.