Filed 4/7/23 P. v. Galindo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JESUS GALINDO, JR.,<br><br>Defendant and Appellant. | F0083606<br><br>(Super. Ct. No. F21902032)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County. Michael G. Idiart, Judge.

J. M. Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, and Ross K. Naughton, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Hill, P. J., Detjen, J. and Meehan, J.

Defendant, Jesus Galindo, Jr., challenges his arrest, arguing it resulted from an illegal search and seizure. A recent opinion issued by the California Supreme Court resolves an issue raised by defendant in both this appeal and in a prior writ filed with this court on whether the use of a spotlight by an officer at night results in a detention triggering certain constitutional rights. Our review of the totality of the circumstances in this case in light of our Supreme Court's recent opinion leads us to conclude the trial court's denial of the motion to suppress is supported by the record.

## PROCEDURAL SUMMARY

On March 9, 2021, a criminal complaint was filed charging defendant with unlawfully possessing a machine gun (Pen. Code,[1] § 32625, subd. (a), a felony; count 1), unlawfully possessing a concealed firearm in a vehicle (§ 25400, subd. (a)(1), a felony; count 2), and unlawfully carrying a loaded firearm in public (§ 25850, subd. (a), a felony; count 3). Special enhancements were also alleged for both counts 2 and 3 that the firearms at issue were stolen (§§ 25400, subd. (c)(2), 25850, subd. (c)(2)), and that defendant was not the registered owner of either weapon (§§ 25400, subd. (c)(6), 25850, subd. (c)(6)).

On June 24, 2021, defendant filed a motion to suppress evidence pursuant to section 1538.5. A preliminary hearing was held on July 19, 2021, at which time defendant's motion to suppress evidence was also heard. At the conclusion of the hearing, defendant was held to answer the allegations contained in the felony complaint, and his motion to suppress evidence was denied. An information was thereafter filed alleging the same three counts and enhancements.

On August 19, 2021, defendant filed a motion to set aside the information, again arguing his arrest was the result of an illegal search and seizure. Following a hearing held on September 3, 2021, that motion was also denied. Defendant then filed a writ of

---

[1] All further statutory references will be to the Penal Code.

prohibition with this court on September 16, 2021, raising the same issue. Defendant's petition to this court was denied on October 21, 2021.

Pursuant to a plea agreement, defendant pled no contest to count 1, resulting in a dismissal of counts 2 and 3, on October 28, 2021. On November 29, 2021, defendant was sentenced to a prison term of one year four months. A notice of appeal was then filed on December 2, 2021.

## FACTUAL SUMMARY

This factual summary comes from the preliminary hearing testimony provided by Clovis Police Officer Eric Curry. Around midnight on March 8, 2021, Curry was on patrol in a fully marked police vehicle, driving through neighborhoods due to a recent increase in thefts of catalytic converters. Curry saw a vehicle parked in an odd location, in that it was not in front of any residence, but rather parked along a fence along the side of a house next to the street. As he drove past, he saw four occupants in the vehicle. Curry stated the occupants of the vehicle appeared to look down, either to avoid eye contact or to avoid being seen. Curry then parked one car length behind the vehicle.

As Curry approached the vehicle, he noticed the smell of marijuana and alcohol. Curry also testified that the occupants appeared to be intoxicated. When he suspected one of the occupants was a minor and it was now past curfew, Curry questioned the minor who admitted he was 17 years old, intoxicated, and a Sureno gang member from the Riverdale area.

Curry asked defendant, who was the driver, to exit the vehicle. Curry testified he decided to search for weapons because there were four occupants in the vehicle, one of whom had admitted to being a gang member. During the pat down search when defendant raised his arms, Curry observed a gun tucked in defendant's waistband. Curry retrieved the loaded firearm, a "Glock 9 mm" which had a "full automatic sear" modifying the weapon to make it capable of firing in a fully automatic fashion. When Curry ran the serial number on the firearm, he learned it was a stolen gun out of

3.

Washington State. He was also able to confirm the firearm was not registered to defendant and that he did not have a permit to carry it.

On cross-examination, Curry admitted the vehicle had been parked legally. Curry explained that while he called for backup, the other officer arrived after he had already approached the vehicle to talk to the occupants. Curry also confirmed that he turned on his patrol vehicle spotlight once he parked behind the suspects. No evidence was provided on the length of time before Curry approached the vehicle, or his demeanor when approaching the vehicle.

## DISCUSSION

The question of whether defendant's rights under the Fourth Amendment were violated was addressed twice in the trial court. First, defendant sought to suppress the evidence of the firearm obtained during the pat down search through a motion to suppress under section 1538.5 during the preliminary hearing. When that motion was denied and the trial court found probable cause supported the charges against defendant, an information was filed against defendant. Defendant then challenged the sufficiency of the allegations supporting the information pursuant to section 995, by again raising the validity of the pat down search.

### I.     The Applicable Standard of Review

Relying on section 995, defendant challenged the evidence supporting the issuance of the information, arguing it was obtained through a search that violated his Fourth Amendment rights. Section 995, subdivision (a)(2), requires the trial court to set aside an information where "the defendant had been committed without reasonable or probable cause." Defendant contends that without the "inadmissible" evidence, the remaining evidence does not support the charges alleged in the information.

"Where, as here, a suppression motion is made before a magistrate in conjunction with a preliminary hearing and no new evidence is presented in superior court, we are 'concerned solely with the findings of the [magistrate].' [Citation.] We defer to the

4.

magistrate's express and implied findings of fact if supported by substantial evidence. [Citations.] We independently assess whether the challenged search or seizure violates the Fourth Amendment, applying federal constitutional standards." (*People v. Tacardon* (2022) 14 Cal.5th 235, 242 (*Tacardon*).) "Appellate review is confined to the correctness or incorrectness of the trial court's ruling, not the reasons for its ruling." (*People v. Superior Court (Chapman)* (2012) 204 Cal.App.4th 1004, 1011.)

The questions we must resolve in this case revolve around whether defendant was "detained" when first contacted by Curry, and if not, whether Curry developed sufficient "reasonable suspicion" when he finally conducted the pat down search of defendant resulting in the discovery of the firearm.

## II. Was Defendant Detained When Curry Parked Behind Defendant's Vehicle and Turned on His Spotlight?

Consensual encounters are considered to be the least intrusive contact between an individual and a law enforcement officer, and do not automatically trigger Fourth Amendment scrutiny. (Caskey, Cal. Search & Seizure (2022) § 4:41.) An officer may initiate a consensual encounter without suspecting the individual has committed or is about to commit a crime. (*Ibid*.) However, once a "detention" occurs, that will be considered a seizure, even if a limited one, for which reasonable suspicion is required. (See *People v. Souza* (1994) 9 Cal.4th 224, 231.)

While this case was pending, there was a recognized split among the district courts of appeal on whether the use of a spotlight on its own results in a detention by law enforcement. In December 2022, the California Supreme Court issued its opinion in *Tacardon*, *supra*, 14 Cal.5th 235 providing more guidance on this issue.

"The outcome here turns on the distinction between a consensual encounter and a detention." (*Tacardon*, *supra*, 14 Cal.5th at p. 241.) As in *Tacardon*, defendant was detained at some point. The *Tacardon* court specifically addressed the question of whether the arrival of a law enforcement officer to the location of a vehicle at night, who

then uses a spotlight to illuminate the area before approaching the vehicle, has detained the occupants of the vehicle at that particular moment. A comparison of the facts between this case and *Tacardon* provides some clarity.

The officer in *Tacardon* was patrolling a residential neighborhood known for narcotics sales and weapons possession around 8:45 p.m. The officer was driving a marked car and had both his headlights and high beams on for " 'extra visibility.' " When the officer drove past a car which was legally parked in front of a residence and near a streetlight, he made eye contact with one of the occupants. While noting the car's engine and headlights were off, the officer also noticed smoke coming through the slightly open windows. The officer then made a U-turn and parked 15 to 20 feet behind the car and turned on his spotlight. The officer did not activate the siren or emergency lights and did not issue any commands to the car's occupants. When the officer finally left his patrol car, he walked toward the car without drawing a weapon. (*Tacardon*, *supra*, at pp. 238–239.)

Over time, different courts of appeal have reached different conclusions on whether similar facts constituted a detention. In the long-standing case of *People v. Perez* (1989) 211 Cal.App.3d 1492, the Sixth District Court of Appeal discussed the significance of a spotlight versus the use of the red and blue emergency lights. In *Perez*, the officer parked facing the defendant's car, but left room for the defendant to drive away. The officer then activated the patrol car's high beams and spotlights, before walking up to the car. The officer knocked on the window, identified himself, then shined a flashlight into the car, and asked the defendant to roll the window down, upon which he immediately smelled marijuana. (*Id.* at pp. 1494–1495.) The *Perez* court did not believe these facts supported the conclusion defendant had been detained, explaining, "[w]hile the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny, such directed scrutiny does not amount to a detention." (*Id.* at p. 1496.)

Although this conclusion in *Perez* has been generally accepted for many years, several more recent opinions have created confusion on the question of whether the use of a spotlight alone rendered the "contact" a detention. For example, the Fourth District Court of Appeal in *People v. Kidd* (2019) 36 Cal.App.5th 12, reached a different conclusion on the use of spotlights.[2]  In *Kidd*, an officer saw two men inside a parked car on a residential street with the car's fog lights on at 1:30 in the morning.  The officer decided to check to see if the occupants were stranded, " 'or what exactly they[ were] doing.' " (*Id*. at p. 15.)  The officer made a U-turn and parked 10 feet behind the vehicle, then turned on two spotlights.  As he approached the vehicle, the officer smelled marijuana smoke and observed the passenger attempting to hide bags of what he suspected were marijuana.  The *Kidd* court first acknowledged the long-standing principles expressed and adopted in cases like *Perez*, but then concluded the defendant was detained without reasonable suspicion "as soon as the officer pulled in behind him and turned his spotlights on him," given the totality of the circumstances.  (*Kidd*, at pp. 21–22.)

The *Tacardon* court seemed especially concerned about the potential confusion created by the following language in *Kidd*:

> "[T]he 'officer's "show of authority" was so intimidating as to communicate to any reasonable person that he or she was " ' "not free to decline [his] requests or otherwise terminate the encounter." ' " ' [Citation.]  As for the significance of the spotlights, the court reasoned: 'motorists are trained to yield immediately when a law enforcement vehicle pulls in behind them and turns on its lights.  Regardless of the color of the lights the officer turned on, a reasonable person in [the defendant's]

---

[2]    Again, several other cases addressing the use of spotlights were discussed by the *Tacardon* court and were distinguished on the facts. (See discussion, *Tacardon*, *supra*, 14 Cal.5th at pp. 243–247)  The focus of the *Kidd* opinion, however, appears to be the most relevant to the court's eventual decision to reiterate the "totality of the circumstances" standard because the *Kidd* court relied so heavily on the use of the spotlight alone.

circumstances "would expect that if he drove off, the officer would respond by following with red light on and siren sounding." ' (*Kidd*[, *supra*, 36 Cal.App.5th] at p. 21.)" (*Tacardon*, *supra*, at pp. 245–246.)

While discussing past case law recognizing the utility of using spotlights in given situations, the *Tacardon* court recognized the use of a spotlight could potentially be used in an authoritative manner when combined with other factors. The *Tacardon* court also noted, however, "individuals frequently have alternatives for asserting their Fourth Amendment rights, such as refusing to answer the officer's questions or otherwise declining to act in the manner the officer has requested. [Citation.] And while many law-abiding citizens will choose to cooperate with the police 'because [they] know that their participation enhances their own safety and the safety of those around them,' that fact alone does not negate the consensual nature of their response." (*Tacardon*, *supra*, 14 Cal.5th at p. 253, citing *United States v. Drayton* (2002) 536 U.S. 194, 205.) As a result, the *Tacardon* court was unwilling to deviate from a principle recently restated in *People v. Brown* (2015) 61 Cal.4th 968, that a bright-line rule was unnecessary, and as a result held the "use of a spotlight, standing alone, does not necessarily effect a detention." (*Tacardon*, at pp. 258–259 [specifically disapproving *Kidd*].)

Curry testified that around midnight he was driving a fully marked police vehicle, during a time in which there had been an increase in thefts of catalytic converters. Curry noticed defendant's vehicle because it was not parked in front of a residence, but along a fence next to the street. As he drove past the vehicle, Curry saw four occupants in the vehicle, who looked down, either to avoid eye contact or to avoid being seen. Curry then parked one car length behind the vehicle and turned on his patrol vehicle spotlight.

Up to this point, the totality of the evidence presented at the preliminary hearing did not support the conclusion the occupants of the vehicle were detained. No evidence was presented at the hearing on the motion to suppress that Curry approached the vehicle in an aggressive manner or took any other action, such as turning on the emergency lights, that would have caused the court to conclude a detention had already occurred.

Our independent assessment of the evidence leads us to conclude Curry's use of the spotlight before he left the patrol car came within the federal constitutional standards summarized in *Tacardon*. As a result, Curry's approach to the vehicle after turning on the spotlight was still in the category of a permissible consensual encounter. We must now consider whether additional circumstances occurring after Curry left his patrol car established the level of reasonable suspicion necessary to support the later pat down search of defendant that is at issue here.

## III.   Did The Eventual Pat Down Search Violate Defendant's Fourth Amendment Rights?

The next question that must be resolved is whether the applicable legal standards and facts support Curry's eventual pat down search of defendant. The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by law enforcement. (*Katz v. United States* (1967) 389 U.S. 347, 353.) The pat down search of defendant could only be justified if Curry developed a reasonable suspicion of criminal activity before actually conducting the search. Absent reasonable suspicion, the discovery of the firearm here would be subject to a motion to suppress. (See *Terry v. Ohio* (1968) 392 U.S. 1, 12, 15, 21–22.)

The court in *Terry* states the authority allowing a peace officer to conduct a reasonable search of an individual exists if there is reason to believe the officer is dealing with an armed and dangerous individual. (*People v. Terry*, *supra*, 392 U.S. 1 at p. 23.) " 'The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " (*King v. State of California* (2015) 242 Cal.App.4th 265, 283.) However, " 'the officer must be able to point to specific and articulable facts together with rational inferences therefrom which reasonably support a suspicion that the suspect is armed and dangerous.' " (*People v. Pantoja* (2022) 77

9.

Cal.App.5th 483, 489.) An " ' "unparticularized suspicion" ' " or " ' " 'hunch' " ' " is not enough. (*Ibid.*)

The evidence presented in response to the motion to suppress showed when Curry left his patrol vehicle he smelled marijuana. When he reached defendant's car, Curry suspected the four occupants were "highly intoxicated." When he guessed at least one of the occupants was a minor and it was at that point past curfew, Curry asked one of those individuals his age. That individual admitted he was 17 years old, and later also admitted he was a Sureno gang member from the Riverdale area. Curry also stated the minor appeared to be "aggressive and upset." Curry explained that while he first asked defendant, who was the driver, to exit the vehicle, his intent was to "get them all out of the vehicle and in an area where [he could] observe all four of them, while [he] conducted [his] investigation, without unknowns in the vehicle." Curry testified he decided to search for weapons "[f]or officer safety" because there were four occupants, and one had just admitted to being a gang member. It was when Curry asked defendant "to put his hands behind his head to conduct [the] pat[ down ]search," that he observed the magazine portion of the firearm "protruding" from the back waistband of defendant's pants.

Again, since *Terry v. Ohio*, courts have upheld the seizure and detention of an individual on less than probable cause, as long as the officer reasonably suspects[3] criminal activity, which is based on articulable facts. (Caskey, Cal. Search & Seizure (2022) § 4:15.) An officer may initiate a brief investigative detention when he or she has "a particularized and objective basis" to suspect legal wrongdoing. (*U.S. v. Cortez* (1981) 449 U.S. 411, 417.)

---

[3] The term "reasonable suspicion" is often used interchangeably with "reasonable cause." (See, for example, *Adams v. Williams* (1972) 407 U.S. 143, 147.)

Our independent review of the record reveals evidence supporting the conclusion Curry acted on a reasonable suspicion there was criminal activity and a risk someone in the car could be armed. Curry's decision to conduct a pat down search of defendant was based on more than an unparticularized suspicion or hunch.[4] The implied findings of the trial court are thus supported by substantial evidence and meet the relevant constitutional standards. (See *Tacardon*, *supra*, 14 Cal.5th 235, 242.)

## DISPOSITION

The motion to set aside the information was properly denied. The judgment is affirmed.

---

[4] Defendant suggests that race may have improperly influenced the decision to conduct the pat down search. Because the record provides absolutely no evidence race factored into any decisions made by Curry, we decline to speculate on its impact here.