Filed 12/7/21  P. v. Ireland CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROD WILLIAM IRELAND,<br><br>        Defendant and Appellant. | A160533<br><br>(Solano County<br>Super. Ct. No. FCR344712) |

This is an appeal from an order denying the motion to suppress evidence filed by defendant Rod William Ireland pursuant to Penal Code section 1538.5.[1]  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 19, 2019, an information was filed charging defendant with possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)) (count 1), possession of a firearm by a prohibited person (Pen. Code, § 29800, subd. (a)(1)) (count 2), and possession of ammunition by a prohibited person (Pen. Code, § 30305, subd. (a)(1)) (count 3).  It was further alleged that defendant had one prior strike conviction (Pen. Code,

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

§§ 667, subds. (b)–(j), 1170.12) and had served one prior prison term (Pen. Code, § 667.5, subd. (b)).

These charges stemmed from an incident in the early morning hours of April 18, 2019, at a public pier in Solano County. Deputy Sheriff Aaron Wilson was on duty in a patrol car in the vicinity of Grizzly Island Road, working with a partner, Deputy Robertson, who was in a separate patrol car. About 3:50 a.m., Deputy Wilson noticed an unoccupied car parked in the parking lot at the Red Barn Pier. He and Deputy Robertson left their cars and walked across the road toward the pier, which was open for fishing "all the time." They could see fishing poles and a dim light, but due to plywood placed across the back of the pier the deputies could not see anyone on the pier. When Deputy Wilson walked onto the pier, he saw a male and female lying on a tarp at the north end. They appeared to be sleeping. Deputy Wilson greeted the couple with " 'good evening' or something like that," and they appeared to wake up. Deputy Wilson asked whether the male and female had fishing licenses, and they answered no. While they were still lying down, Deputy Wilson told them to reel in their lines. At that point, the male, later identified as defendant, stood up without being told to do so. As he did so, Deputy Wilson saw a handgun on the deck of the pier where defendant had been sleeping. Deputy Wilson detained defendant in handcuffs, and when defendant asked why, Wilson responded, "[F]or officer safety . . . ." Defendant then made a spontaneous statement that he was not supposed to possess the handgun because he was on probation.

After being handcuffed, defendant identified himself and informed the deputies that his identification was in his car, parked in the lot next to the pier. Deputy Wilson walked defendant across the road to the backseat of his patrol car, where the deputy learned from dispatch that defendant was on

2

"active PRCS [postrelease community supervision] with search terms" and that the car in the lot was registered in his name. Deputy Wilson advised defendant that he was going to conduct a search of his vehicle, at which point defendant told the deputy he would find a bag of dope. In addition to finding a bag containing a white crystalline substance in the center console, the deputy found a broken methamphetamine pipe. Defendant was arrested and taken into custody.

On June 24, 2019, defendant entered a not guilty plea and denied the enhancements.

On December 20, 2019, defendant moved to suppress evidence pursuant to section 1538.5. A hearing on his motion was held January 6, 2020, with Deputy Wilson testifying. Afterward, the trial court issued a denial.

On January 7, 2020, defendant's trial date, defendant entered a no contest plea to the three counts and admitted the prior strike while reserving the right to appeal the court's denial of his motion to suppress. Defendant was sentenced to four years in prison. On July 13, 2020, defendant filed a timely notice of appeal.

## DISCUSSION

Defendant challenges the trial court's denial of his motion to suppress evidence (§ 1538.5). Defendant asserts that his warrantless detention and subsequent arrest and search were unlawful under the Fourth Amendment of the United States Constitution. The governing law is not in dispute.

The right of all citizens " 'to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .' (U.S. Const., Amend. IV.) State and local law enforcement officials are subject to the requirements of the Fourth Amendment based

3

upon the operation of the due process clause of the Fourteenth Amendment to the United States Constitution." (*People v. Banks* (1993) 6 Cal.4th 926, 934.)

"[T]he temporary detention of a person for the purpose of investigating possible criminal activity may, because it is less intrusive than an arrest, be based on 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity. (*United States v. Cortez* (1981) 449 U.S. 411, 417 & fn. 2 [citations]; see also *In re Tony C.* (1978) 21 Cal.3d 888, 893 [citations] [in which this court articulated a two-part test: (1) that some activity relating to crime has taken place, is occurring, or is about to occur; and (2) that the person to be detained is involved in that activity].)" (*People v. Souza* (1994) 9 Cal.4th 224, 230.) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*Id.* at p. 231.)[2]

Section 1538.5 authorizes a defendant to move to suppress evidence obtained as a result of an unlawful search or seizure. (§ 1538.5.) On appeal from the denial of such motion, we defer to the trial court's findings of fact if supported by substantial evidence. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145.) We view the relevant facts in the light most favorable to the trial court's ruling, resolving all conflicts in its favor. (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.) We independently review only the trial court's

---

[2] A " 'reasonable suspicion' " to detain requires a lesser showing than "probable cause" to arrest. Not only can " 'reasonable suspicion . . . be established with information that is different in quantity or content than that required to establish probable cause, but also . . . reasonable suspicion can arise from information that is less reliable than that required to show probable cause.' " (*People v. Souza, supra*, 9 Cal.4th at pp. 230–231, quoting *Alabama v. White* (1990) 496 U.S. 325, 330.)

application of the law to these facts. (*Ibid.*) If correct on any relevant theory, the trial court's ruling stands. (*People v. Letner and Tobin, supra*, at p. 145.)

Here, defendant argues the totality of relevant circumstances precludes a finding of reasonable suspicion by law enforcement that, at the time he was detained, he was involved in criminal activity. As such, defendant concludes his detention ran afoul of the constitutional prohibition against unreasonable search and seizure of a person, requiring suppression of the subsequently obtained evidence and withdrawal of his no contest plea. (See U.S. Const., 4th & 14th Amends.; Cal. Const., art. 1, § 13.) The following record is relevant.

At the hearing on defendant's motion to suppress, Deputy Wilson described the pier at the crime scene as T-shaped. "You walk out on the walkway and it basically Ts off, and you have an area where you can fish on either side of the pier." The top of the T was about six or seven feet wide and no more than 20 feet long, and the stem or walkway was about six feet wide but only 12 to 15 feet long. Deputy Robertson was behind Deputy Wilson on this "narrow" walkway as they walked to the top of the T, where they could see behind some plywood where defendant and his companion were sleeping.

It was quite dark, with no street or other lights except for the one defendant and his companion had lit. The pier was in a remote area surrounded by marshland with no houses or buildings nearby. The deputies shined their flashlights toward the couple. Deputy Wilson testified that he "may have shined [his] light on them." As Deputy Wilson spoke to the couple, first greeting them then asking whether they had fishing licenses and telling them to reel in their lines, he was probably less than four or five feet away. Deputy Wilson acknowledged in testimony, "[T]here's not a lot of room there."

5

The encounter between the deputies and the couple, from the time Deputy Wilson greeted them to the time he saw the handgun on the pier where defendant had been lying, lasted "[m]aybe a minute." Although Deputy Wilson did not instruct the couple to stand, "[a]s soon as I contacted [defendant], they stood up. Well, [defendant] stood up and his companion rolled off to the side and stood up." It was at that point that Deputy Wilson saw the handgun and detained defendant in handcuffs for "officer safety."

Following the hearing, the trial court denied defendant's motion, reasoning: "I feel like the officers were investigating the car that was empty. They walk up to the pier and, upon seeing Mr. Ireland and his companion, it was still at that point a consensual encounter. Even the light shining is a consensual encounter. It's dark out. They have a flashlight out there. I believe this is still a consensual encounter at that point. The officer is well within his purview as a sheriff's officer to ask the individuals whether or not they have a fishing license.

"Upon being told they don't have fishing licenses, they're breaking the Fish and Game law. At that point the officer told them to reel in the fishing poles. So it's at that point that he stood up and in plain view saw the firearm. So at that point he could then place them under arrest or detain him to further investigate the firearm.

"So based on that I'm going to deny the motion to suppress. I'm also going to make a finding that the search of the vehicle was a lawful search of the vehicle based on the fact that Mr. Ireland was on a lawful search and seizure clause."

Based on our review of the record, we agree with the trial court that the initial contact between Deputy Wilson and defendant was consensual, requiring no objective justification. (See *Florida v. Bostick* (1991) 501 U.S.

6

429, 434 ["a seizure does not occur simply because a police officer approaches an individual and asks a few questions"]; *Terry v. Ohio* (1968) 392 U.S. 1, 19, fn. 16 ["Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred"].) At the inception of their encounter, the deputies merely greeted defendant in a nonaggressive manner; asked the basic question whether he was licensed to fish; and learning he was not, advised him to pull in his line. The deputies did not command defendant to stand; however, defendant stood up. At that point, the deputies saw a firearm where defendant had just been lying, providing them with "specific articulable facts" demonstrating "some objective manifestation" that defendant was involved in criminal activity, such that their decision to handcuff him did not run afoul of the constitutional prohibition against unreasonable search and seizure. (See *People v. Souza, supra*, 9 Cal.4th at p. 231; U.S. Const., 4th & 14th Amends.; Cal. Const., art. 1, § 13.)

Defendant relies on the facts that the deputies approached him at 3:50 a.m. on a narrow pier, blocking his exit, and shined a flashlight on him while he and his companion slept to insist he was unlawfully detained *before* Deputy Wilson saw his gun. According to defendant, he was detained at the point that Deputy Wilson asked whether he had a fishing license. (See *People v. Linn* (2015) 241 Cal.App.4th 46, 58 ["Questions by an officer of a *sufficiently accusatory nature* may 'be cause to view an encounter as a nonconsensual detention'" (italics added)].)

Even assuming for the sake of argument defendant is correct that he was detained before Deputy Wilson saw his gun, we would nonetheless find no Fourth Amendment violation on this record. First, the deputies' use of flashlights and positioning on the narrow pier were more a matter of

necessity than a display of authority. As Deputy Wilson testified, the pier was in a remote area unilluminated by light aside from the flashlights and defendant's dim light.[3] Further, defendant and his companion were not visible to the deputies until they walked down the pier's walkway toward the fishing poles and dim light and were able to look beyond the plywood area across the back of the pier. While the pier was quite narrow, the deputies at no point activated a siren, drew or displayed a weapon, or employed an aggressive tone or manner that would have suggested to defendant that he was not free to leave the encounter. (See *People v. Kidd* (2019) 36 Cal.App.5th 12, 21 ["Without more, a law enforcement officer shining a spotlight on a person does not constitute a detention"]; *In re Manuel G.* (1997) 16 Cal.4th 805, 823 (*Manuel G.*) ["there is no evidence in the record suggesting that Sims, by words, gestures, or other coercive conduct, restrained the minor in any manner before the minor threatened to kill [the officer]"].) As the California Supreme Court reminds us, "even if the testimony upon which the minor relies *might* support a finding that the encounter *was* a detention, we must view the evidence in the light most favorable to the judgment below. [Citation.] If the circumstances reasonably justify the juvenile court's finding, we cannot reverse merely because the circumstances also might support a contrary finding." (*Manuel G., supra*, at p. 823.)

Second, it is quite reasonable, and by no means coercive or aggressive, for a law enforcement officer to ask a person found with fishing lines on a public pier whether he or she is licensed to fish. (See Fish & G. Code, § 7145, subd. (a) ["Except as otherwise provided . . . , every person 16 years of age or

---

[3] Deputy Wilson recalled, "[T]here may be one dim light in the dirt lot . . . ."

older who takes any fish, reptile, or amphibian for any purpose other than profit shall first obtain a valid license for that purpose and shall have that license on his or her person or in his or her immediate possession"].) And once the couple acknowledged not having a license, Deputy Wilson was entitled as an officer of the law to detain them and command that they reel in their fishing lines. (*People v. Brown* (2015) 61 Cal.4th 968, 981 [" '[W]here a reasonable suspicion of criminal activity exists, "the public rightfully expects a police officer to inquire into such circumstances 'in the proper exercise of the officer's duties' " ' "].)

Accordingly, our independent review leads us to conclude that the trial court's denial of defendant's motion to suppress evidence was correct, and we affirm. (See *Manuel G., supra*, 16 Cal.4th at p. 825; see also *People v. Jenkins, supra*, 22 Cal.4th at p. 969 [if correct on any relevant theory, the trial court's ruling stands].)

## DISPOSITION

The order denying defendant's motion to suppress evidence is affirmed.

_____
Jackson, P. J.

WE CONCUR:


_____
Needham, J.


_____
Burns, J.


A160533/*People v. Rod William Ireland*

9